1   DANIEL M. PETROCELLI (S.B. #97802)
    dpetrocelli@omm.com
2   JAMES M. PEARL (S.B. #198481)
    jpearl@omm.com
3   BRIAN FINKELSTEIN (S.B. #261000)
    brianfinkelstein@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   Attorneys for Defendants
    WARNER BROS. ENTERTAINMENT,
8   INC. and JOHN LOGAN

9                  **UNITED STATES DISTRICT COURT**

10                **CENTRAL DISTRICT OF CALIFORNIA**

11

12
    AARON BENAY,  *et al.*,                Case No.  CV05-8508 PSG (FMOx)
13
                    Plaintiffs,            **DEFENDANTS WARNER BROS.**
14                                         **ENTERTAINMENT, INC. AND**
                                           **JOHN LOGAN'S NOTICE OF**
15          v.                             **MOTION AND MOTION FOR**
                                           **TERMINATING AND OTHER**
16   WARNER BROS.                          **SANCTIONS AGAINST**
     ENTERTAINMENT, INC., *et al.*,        **PLAINTIFFS AARON BENAY AND**
17                                         **MATTHEW BENAY**
                    Defendants
18                                         Hearing Date:  March 12, 2012
                                           Time:          1:30 p.m.
19                                         Place:         Courtroom 880
                                           Judge:         Hon. Philip S. Gutierrez
20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 12, 2012[1], at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Philip S. Gutierrez, United State District Court Judge, in Courtroom 880 in the Edward R. Roybal Building, 255 East Temple Street, Los Angeles, California, 90012, defendants Warner Bros. Entertainment, Inc. ("Warner Bros.") and John Logan (the "Moving Defendants") will and hereby do move this Court, pursuant to the Court's inherent authority to prevent abuses of the litigation process, Federal Rule of Civil Procedure 41(b), and Local Rules 11-9 and 83-7 for an order of sanctions against plaintiffs Aaron Benay and Matthew Benay terminating this action with prejudice and awarding attorneys' fees and costs to defendants.

The grounds for this Motion for Terminating and Other Sanctions Against Plaintiffs Aaron Benay and Matthew Benay are plaintiffs or their agents' manufacture and use of fabricated documents attached to the March 29, 2011 anonymous letter; plaintiffs' representations to the Court—including at hearings on April 4, 2011 and June 13, 2011—that the documents were authentic and that plaintiffs were not responsible for their creation or distribution; plaintiffs' knowingly false deposition testimony; plaintiffs' refusal to withdraw the documents after being put on notice that they were false; and all such other and further grounds disclosed in the accompanying papers.

In the alternative, if terminating sanctions are not entered against plaintiffs, Moving Defendants will and hereby do move this Court for an order excluding the documents and the anonymous letter from being used as evidence in this litigation,

---

[1] March 12, 2012 is the Court's first available hearing date.  The hearing for defendants Warner Bros. Entertainment, Inc. and John Logan's motion for summary judgment (Docket No. 271) is currently noticed for February 6, 2012.  Because both this motion and the summary judgment motion address overlapping subject matter, Warner Bros. Entertainment, Inc. and Mr. Logan intend to seek an order that both motions be heard concurrently on February 6.

1   for such other relief disclosed in the accompanying papers, and/or for such other
2   relief that the Court may see fit to grant.

3       This motion concerns the fabrication of documents, portions of which were
4   cut and pasted from genuine documents in the Court record by plaintiffs or their
5   agents.  To assist the Court in understanding and assessing the evidence of such
6   fabrication, the Moving Defendants hereby request the Court set a special
7   evidentiary hearing, no longer than half a court day, for the purpose of presenting
8   live testimony and argument on this issue.

9       This motion is based upon this notice of motion and motion, the attached
10  memorandum of points and authorities, the declarations and other evidence filed
11  concurrently herewith, the pleadings and records on file in this action, and on such
12  other and further evidence as the Court may consider at or before the hearing.  This
13  motion is made following the conference of counsel pursuant to Local Rule 7-3 and
14  Judge Gutierrez's Standing Order Regarding Newly Assigned Cases ¶ 5(b) which
15  took place on October 9, October 12, and October 27, 2011.

16

17      Dated:    December 21, 2011          O'MELVENY & MYERS LLP

18

19                                          By:   /s/ Daniel M. Petrocelli
20                                               Daniel M. Petrocelli

21                                          Attorneys for Defendants Warner
22                                          Bros. Entertainment, Inc. and John
                                            Logan
23

24

25

26

27

28

- 2 -

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.    INTRODUCTION ............................................................................1

II.   HISTORY OF THE FALSIFIED DOCUMENTS.........................................3

    A.    The Appearance of the Falsified Documents........................................3

    B.    Plaintiffs Relied on the Falsified Documents and Used Them to Tar Defendants..............................................................................4

    C.    Plaintiffs Were Notified That the Falsified Documents Were Inauthentic and Refused to Withdraw Them. ......................................4

III.  THE FALSIFIED DOCUMENTS ARE FORGERIES. ................................5

    A.    The Fax Allegedly Sent by Mr. Zwick Contains Material That was Cut and Pasted from a Document in the Record. .........................5

    B.    The Three Falsified E-Mails Contain Indicia of Forgery. ....................9

    C.    All Authors and Recipients of the Falsified Documents Deny Their Authenticity. ..................................................................... 12

    D.    Plaintiffs or Their Agents Created the Falsified Documents.............. 12

        1.    Motive:  Plaintiffs' Case Would Falter Without the Falsified Documents. ................................................ 13

        2.    Access and Ability:  Plaintiffs' Had Access to the Documents and Facts Necessary to Create the Forgeries........ 15

        3.    Plaintiffs Failed to Fully Investigate the Documents. .............. 16

IV.   FULL DISMISSAL WITH PREJUDICE IS THE ONLY SANCTION THAT WILL PROVIDE APPROPRIATE RELIEF. ................................. 16

    A.    Terminating Sanctions are Appropriate. ............................................ 16

        1.    Courts Routinely Enter Terminating Sanctions in Similar Situations. ................................................................ 18

        2.    All Factors Favor Termination in This Case. ..........................20

    B.    Attorneys' Fees and Costs Are Appropriate. ....................................23

    C.    In the Alternative, the Documents Must be Excluded and the Jury Instructed as to the Fake Evidence..............................................24

        1.    Evidentiary Sanctions. .................................................24

        2.    Jury Instructions Concerning Plaintiffs' Misconduct..............25

V.    CONCLUSION .............................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amarkarian v. City of Glendale*,
No. CV 08-980-PSG(E), 2008 WL 2627824 (C.D. Cal.
July 3, 2008) ................................................................................ 17

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ................................................ 17, 21, 22

*Aoude v. Mobil Oil Corp.*,
892 F.2d 1115 (1st Cir. 1989) ......................................................... 17

*Benay v. Warner Bros. Entm't, Inc.*,
607 F.3d 620 (9th Cir. 2010) .................................................. 1, 3, 13

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ..................................................................... 17, 23

*Combs v. Rockwell Int'l Corp.*,
927 F.2d 486 (9th Cir. 1991) ..................................... 3, 17, 19, 20

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
482 F.3d 1091 (9th Cir. 2007) ............................................ 21, 22, 23

*Emma C. v. Eastin*,
No. C-96-4179, 2001 WL 1180638 (N.D. Cal. Oct. 4,
2001) .............................................................................................. 17

*Espinoza v. Nw. Univ.*,
No. 02 C 7563, 2004 WL 416471 (N.D. Ill. Jan. 30,
2004) .......................................................................................... 18, 24

*Forsberg v. Pefanis*,
No. 1:07-cv-03116-JOF, 2009 WL 4798124 (N.D. Ga.
Dec. 8, 2009) ......................................................................... 18, 20, 23

*Greenburg v. Roberts Props., Ltd.*,
246 F. App'x 500 (9th Cir. 2007) ........................................... 17, 24

*In re Al Khenaizi*,
No. 00-82698, ADV. 00-8140, 2001 WL 34076051
(Bankr. C.D. Ill. Apr. 3, 2001) .................................................... 12

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ................................... 16, 20, 22, 23

*Malone v. U.S. Postal Serv.*,
833 F.2d 128 (9th Cir. 1987) ........................................................ 21

*McConnell v. Lassen Cnty.*,
No. Civ. S-05-0909, 2009 WL 3365912 (E.D. Cal.
Oct. 16, 2009) ...................................................................... 18, 24

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1

2

## TABLE OF AUTHORITIES
(continued)

**Page**

3

4

*Nat'l Corp. Tax Credit Funds III, IV, VI, VII v. Potashnik*,
   No. CV 07-3528 pSG (FMOx), 2010 WL 457626
   (C.D. Cal. Feb. 4, 2010) ................................................. 21

5

6

*Orr v. Bank of Am.*,
   285 F.3d 764 (9th Cir. Cal. 2002) ................................... 24

7

*Pope v. Fed. Express Corp.*,
   974 F.2d 982 (8th Cir. 1992) ........................... 18, 19, 20, 21

8

9

*Prof. Seminar Consultants, Inc. v. Sino Am. Tech. Exch.
   Council, Inc.*,
   727 F.2d 1470 (9th Cir. 1984) ......................................... 17

10

11

*Sun World, Inc. v. Olivarria*,
   144 F.R.D. 384 (E.D. Cal. 1992) ............................... passim

12

*Total Containment, Inc., v. Environ Prods., Inc.*,
   921 F. Supp. 1355 (E.D. Pa. 1995), *vacated in part on
   other grounds*, 106 F.3d 427 (Fed. Cir. 1997) ................... 9

13

14

*Vargas v. Peltz*,
   901 F. Supp. 1572 (S.D. Fla. 1995) ..................... 3, 17, 20, 23

15

16

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ........................................... 23

## STATUTES

17

18

18 U.S.C. § 1341 ............................................................. 18

19

18 U.S.C. § 1621 ............................................................. 18

20

18 U.S.C. § 1623(a) ......................................................... 18

21

18 U.S.C. § 1962 ............................................................. 18

22

28 U.S.C. § 1927 ............................................................. 18

23

Cal. Penal Code § 470(b) .................................................. 18

## RULES

24

C.D. Cal. R. 11-9 ....................................................... 16, 24

25

C.D. Cal. R. 83-7 ....................................................... 16, 24

26

Fed. R. Civ. P. 41(b) ....................................................... 16

27

Fed. R. Evid. 901(a) ........................................................ 24

28

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs Aaron Benay and Matthew Benay seek to proffer as evidence in this case four newly surfaced documents in the hope of filling fatal gaps in their sole remaining claim.  These documents arrived suddenly, mysteriously, and anonymously after the Ninth Circuit Court of Appeals last year affirmed the dismissal of plaintiffs' copyright infringement and other claims and reversed and remanded the case to this Court for further proceedings on plaintiffs' implied-in-fact contract claim.  Incontrovertible forensic evidence demonstrates the new documents are forgeries.  All the evidence strongly points to plaintiffs or their agents as the source of the fabricated documents.  Even after being confronted with undeniable proof that the documents are fake, plaintiffs continue to defiantly endorse them as genuine.  Terminating sanctions are necessary and appropriate to prevent this fraud on defendants and the Court.

Plaintiffs commenced this suit in December 2005, asserting that the script for the film *The Last Samurai* was copied from a script plaintiffs had written (the "Benay Script").  Plaintiffs' complaint alleged claims for copyright infringement, breach of implied-in-fact contract, breach of confidence, and intentional interference with prospective economic advantage.  After five years of litigation, plaintiffs' only remaining claim is for breach of implied-in-fact contract.  As the Ninth Circuit held in this case in June 2010, plaintiffs must prove privity of contract with defendants to sustain such a claim.  *See Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 634 (9th Cir. 2010).  It is indisputable that plaintiffs cannot prove privity of contract with defendants Warner Bros. Entertainment, Inc. ("Warner Bros.") or John Logan (collectively "Moving Defendants").  Neither defendant saw or heard about the Benay Script, let alone misappropriated it.  Nor can plaintiffs overcome defendants' proof of independent creation.

Knowing their claim was doomed, someone—almost certainly plaintiffs—forged three e-mails, plus one fax attaching notated excerpts from the Benay Script. The documents, accompanied by an "anonymous" cover letter, were mailed to the attorneys of record in this case at the end of March 2011.  Immediately thereafter, plaintiffs' counsel announced in open court his receipt of dramatic new evidence proving defendants not only stole plaintiffs' script, but also committed perjury in denying their wrongdoing throughout this litigation.  Plaintiffs filed a motion to reopen discovery based on the documents.

Defendants have thoroughly investigated the authenticity of the four documents and can forensically demonstrate they are fake.[1]  All of *The Last Samurai* director Ed Zwick's handwriting on the documents was cut-and-pasted from documents in the Court record.  The three e-mails are erroneously timestamped "Pacific Standard Time"—if they were real they would have been timestamped "Pacific Daylight Time."  They also contain subtle printing errors that prove they were manufactured using a single blank e-mail as a template.  All four documents are aimed at specific holes in plaintiffs' case highlighted by the Ninth Circuit and were prepared by someone with unfettered access to the Court record and an intimate knowledge of the case.  Although they have denied creating the documents, only plaintiffs or their agents would have the knowledge, motive, and means to have authored these documents.

Despite several chances to abandon their scheme, plaintiffs persist in using the fabricated documents.  Before filing this sanctions motion Moving Defendants provided plaintiffs with detailed proof that the documents are fake and asked plaintiffs to withdraw their reliance on them.  Plaintiffs refused.

---

[1] Even assuming the documents were genuine, they do not show privity of contract, as explained in the recently filed Motion for Summary Judgment (Docket No. 271).

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1    The tendering of false evidence is unlawful and must be punished with

2  sufficient severity to deter others who would corrupt the judicial process.  Nothing

3  short of terminating sanctions adequately accomplishes this goal.  *See Combs v.*

4  *Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("[f]alsifying evidence is

5  grounds for the imposition of the sanction of dismissal"); *Vargas v. Peltz*, 901 F.

6  Supp. 1572, 1581 (S.D. Fla. 1995) ("federal case law is well established that

7  dismissal is the appropriate sanction where a party manufactures evidence which

8  purports to corroborate its substantive claims").

9  **II.    HISTORY OF THE FALSIFIED DOCUMENTS**

10       **A.    The Appearance of the Falsified Documents.**

11       On June 9, 2010, the Ninth Circuit remanded plaintiffs' final remaining claim

12  for breach of implied-in-fact contract to the Central District.  *See Benay*, 607 F.3d

13  at 634.  Defendants argued to the Ninth Circuit that plaintiffs' breach of implied-in-

14  fact contract claim fails for lack of privity in that plaintiffs never alleged—and

15  never had—*any* relevant contact with Moving Defendants, Radar Pictures,[2]

16  Mr. Zwick, or Marshall Herskovitz.  Ex. 2 (Ninth Circuit Appellee's Answering

17  Brief at 63-66).  In remanding the case, the Ninth Circuit highlighted the issue for

18  resolution by this Court.  *See Benay*, 607 F.3d at 634 ("We leave it to the district

19  court to decide. . . .").

20       Shortly after March 29, 2011, just days before the first hearing on remand, all

21  the attorneys of record reportedly received an anonymous letter via first-class mail.

22  Pearl Decl. ¶ 4, Ex. 3.  This anonymous letter accused Warner Bros. of litigation

23  and business misconduct and attached four documents it claimed were

24  "communications between the producers of 'The Last Samurai,' which they

25

26 _____

27       [2] Radar Pictures has since been dismissed from this litigation. Ex. 1 (Order
Dismissing Defendant Radar Pictures, Inc. with Prejudice).  All exhibit numbers
28  refer to exhibits to the Declaration of James Pearl (hereinafter "Pearl Decl."), filed
concurrently with this motion.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

intentionally withheld from the court." *Id.* The letter enclosed three e-mails and one fax attaching several pages of notated excerpts from the Benay Script. *Id.*

**B.     Plaintiffs Relied on the Falsified Documents and Used Them to Tar Defendants.**

Without undertaking any diligent steps to authenticate or even question the documents, plaintiffs declared to this Court that the documents were genuine and moved to reopen discovery based on their emergence. At the April 4, 2011 status conference, plaintiffs' counsel represented "I have no doubt that these documents are authentic." Ex. 5 (Apr. 4, 2011 Hearing Transcript (hereinafter "Apr. 4 Tr.") at 5). Plaintiffs' Motion to Reopen Discovery asserted the falsified documents were "facially valid" and that "there is no reason to believe [they are not authentic]." Ex. 4 (Plaintiffs' Motion to Reopen Discovery (hereinafter "Mot. Reopen") at 10, 12). During the June 13, 2011 hearing on that motion, plaintiffs' counsel stated that he "ha[d] no reason to doubt [the falsified documents] [a]re not" authentic. Ex. 6 (June 13, 2011 Hearing Transcript (hereinafter "June 13 Tr.") at 12). At the same time, plaintiffs accused defendants of concealing the documents and lying under oath.[3]

**C.     Plaintiffs Were Notified That the Falsified Documents Were Inauthentic and Refused to Withdraw Them.**

Defendants repeatedly have informed plaintiffs the documents are not authentic and shown exactly how they were fabricated. Prior to filing this motion, Moving Defendants sent plaintiffs' counsel a meet-and-confer letter disclosing the grounds for this motion and asking plaintiffs to refrain from using the documents. Ex. 20 (Oct. 12, 2011 letter). Plaintiffs refused and reiterated they were "planning

---

[3] Compounding their misconduct, plaintiffs and their counsel asserted (a) defendants "hid[]" documents from discovery (Mot. Reopen at 10); (b) defendants "stole the script and they lied in their depositions" (Ex. 5 (Apr. 4 Tr. at 5)); (c) defendants engaged in a "pattern of dishonesty" (Mot. Reopen at 11), "document tampering" (*id.*), and "wrongdoing" (Ex. 6 (June 13 Tr. at 4)); and (d) plaintiffs' counsel has "never seen perjury of [this] magnitude" (Ex. 5 (Apr. 4 Tr. at 4)).

1  on offering the attachments to the letter as evidence." Ex. 21 (Oct. 14, 2011 letter
2  at 5).

3    Moving Defendants sent plaintiffs a second meet-and-confer letter detailing
4  the evidence demonstrating the documents are false, including that (a) Mr. Zwick's
5  signature on the forged fax was cut and pasted from a document produced in this
6  litigation Bates stamped BB00861; (b) Mr. Zwick's handwriting on the screenplay
7  excerpts was cut-and-pasted from another document produced in this litigation
8  Bates stamped BF5193; and (c) the falsified e-mails were generated using a
9  template and that timestamp data on the e-mails was incorrect.  Ex. 22 (Oct. 28,
10  2011 letter).  Plaintiffs did not respond.  Pearl Decl. ¶ 24.

11    On December 2, 2011, Moving Defendants filed their Motion for Summary
12  Judgment and attached to it a declaration by Erich Speckin, a leading national
13  expert in the field of forensic document examination.  Pearl Decl. ¶ 28, Ex. 26
14  (Declaration of Erich Speckin in support of Moving Defendants' Motion for
15  Summary Judgment).  Mr. Speckin's declaration—substantively identical to his
16  declaration in support of this motion—explained in detail why the documents are
17  not authentic.  Again, plaintiffs did not respond or otherwise indicate their
18  willingness to acknowledge the documents are fake.  Pearl Decl. ¶ 29.

19  **III.** **THE FALSIFIED DOCUMENTS ARE FORGERIES.**

20    **A.** **The Fax Allegedly Sent by Mr. Zwick Contains Material That Was
21      Cut and Pasted from a Document in the Record.**

22    The fax attached to the anonymous letter purports to contain Mr. Zwick's
23  signature and to attach pages of the Benay Script with notes written by Mr. Zwick
24  in the margins.  In reality, this "fax" was created after this litigation began by
25  someone who literally cut-and-pasted material from documents in the Court record
26  onto a wholly new document.

27    The first page of the falsified fax, dated May 17, 2000, includes Mr. Zwick's
28  signature.  As Mr. Zwick testified, the signature is his, but it didn't get there by his

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

hand.  Ex. 7 (Zwick Dep. Vol. 2 at 32:15-19; 38:1-5; 43:25-44:17).  Instead, the
signature was mechanically copied from a document produced by plaintiffs in this
litigation—an April 18, 2000 fax from Mr. Zwick to Mr. Logan Bates numbered
BB00861.[4]  Ex. 8 (BB00861); Speckin Decl. ¶¶ 14-20.  Reproduced below are
Mr. Zwick's original signature from the April 18, 2000 fax (left) and the cut-and-
paste copy from the falsified document (right):



Even a cursory visual analysis of these two signatures shows they appear to
be copies.  By inverting the colors of one signature and overlaying it on top of the
other, it is possible to see that the shapes of the signatures, and specific
deformations within these shapes, are identical (see below).

---

[4] Defendants provided a copy of the April 18, 2000 fax to plaintiffs before
plaintiffs filed a complaint in this action in the hopes of avoiding litigation.  Both
defendants and plaintiffs subsequently produced copies of this fax in discovery.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

Signature from falsified document in white, BB00861 in black.
Speckin Decl. ¶¶ 17-18.

A foundational principle of forensic document analysis is that no two pieces of handwriting can be exactly the same; there will always be some variation even in two signatures made by the same person moments apart. Speckin Decl. ¶ 15. The two signatures reproduced above, though found on two different documents, are forensically identical. *Id.* ¶¶ 16-20. This can only happen when one signature is a mechanical reproduction of the other. *Id.* ¶ 15.

Similarly, handwritten notes on the screenplay excerpts attached to the false May 17, 2000 fax were cut and pasted from notes on a real May 19, 2000 fax from Mr. Logan to Mr. Zwick that was produced by Bedford Falls in this litigation Bates numbered BF5193. Ex. 9 (BF5193). The false screenplay excerpts contain four handwritten notations: "NEED OUR HERO" (first page); "ASKED TO GO" (second page); "LOVE THIS HERO" (third page); and "THE EMPEROR VS. SAIGO" (fifth page). Each word in these notations was cut and pasted from Mr. Zwick's notes on BF5193:

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

| | Word(s) in Screenplay Excerpts | Source Word(s) in BF5193 | Page in Screenplay Excerpts | Source Page in BF5193 |
|---|---|---|---|---|
| 1. | NEED | NEED | 1 | BF5196 |
| 2. | OUR HERO | OUR HERO'S | 1 | BF5193 |
| 3. | ASKED TO | ASKED TO | 2 | BF5196 |
| 4. | GO | SAIGO | 2 | BF5199 |
| 5. | LOVE | LOVE | 3 | BF5193 |
| 6. | THIS | THIS | 3 | BF5198 |
| 7. | HERO | HERO | 3 | BF5198 |
| 8. | THE | THE | 5 | BF5199 |
| 9. | EMPEROR | EMPEROR | 5 | BF5199 |
| 10. | VS. | VS. | 5 | BF5196 |
| 11. | SAIGO | SAIGO | 5 | BF5193 |

Speckin Decl. ¶ 21.

Reproduced below are two samples of Mr. Zwick's original handwriting from the May 19, 2000 fax (left), and the cut-and-paste copies from the falsified document (center); on the right is an overlay showing the May 19, 2000 fax in black and the cut-and-past copy in white:

| May 19, 2000 fax (BF5193) | The forged fax | Overlay |
|---|---|---|
|  |  |  |
|  |  |  |

Images of all 11 pairings are included in Appendix A; overlays of all 11 pairings are included in Appendix B.  Each of these pairings is identical, proving that all the handwritten marginalia on the forged fax was mechanically copied from BF5193.[5] Speckin Decl. ¶¶ 21-26.

_____

[5] Courts recognize that "a fax burn-in can be rather easily faked. . . the burn-in from one document can be photocopied onto another document with an office

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

**B.     The Three Falsified E-Mails Contain Indicia of Forgery.**

Each of the three e-mails attached to the anonymous letter contains indicia showing it was generated by adding text to a blank AOL.com e-mail template. Speckin Decl. ¶¶ 13, 27-43.  First, the e-mails all bear the same inaccurate time stamp.  All three e-mails were purportedly sent in May 2000.  In 2000, "Pacific Daylight Time" was observed from the first Sunday in April (April 2) through the last Sunday in October (October 29).  *Id.* ¶ 28.  The three e-mails were all dated in May 2000, and if authentic would have been time-stamped "Pacific Daylight Time."  *Id.* ¶ 28.  Instead, all three are time-stamped "Pacific Standard Time" (red arrows added for emphasis):



copier."  *E.g., Total Containment, Inc., v. Environ Prods., Inc.*, 921 F. Supp. 1355, 1370 n.3 (E.D. Pa. 1995), *vacated in part on other grounds*, 106 F.3d 427 (Fed. Cir. 1997).  Here, defendants produced faxes sent by Mr. Zwick to Mr. Logan in discovery, making a similar fax relatively easy to fabricate.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1  The creator of the three e-mails blundered when creating them; their falsity is

2  obvious.

3  　　Second, all three e-mails appear to be printouts of an e-mail surrounded by an

4  AOL.com interface.  Each printout consists of a header (subject, date, from, and to

5  information), the substantive message, and framing elements (the various other

6  elements such as the AOL.com logo; the row of buttons immediately below the

7  logo; the "Reply", "Reply All", and "Forward" buttons on the right side; and the

8  "Other AOL Sites" information at the bottom).  The header and message are

9  different on each e-mail, but the framing elements are identical on all three.

10  Speckin Decl. ¶¶ 31-35.  This means the creator of these e-mails likely had access

11  to a printout of an AOL.com e-mail and removed the header and body leaving a

12  blank template, like this (Speckin Decl. ¶ 33):



23  　　Once the creator had this template, he could use a computer to insert

24  whatever header and body information he wanted.  Because any new e-mails would

25  be based on the original template, anything in the original framing elements—

26  including any printing damage—would also appear in the newly generated e-mail.

27  This process leaves telltale similarities in each new document.  *Id*. ¶¶ 34-35.  These

28  similarities are present in all three e-mails.  *Id*. ¶ 35.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1   As one example (and there are others), an examination of the word "Shop"—

2   the fifth tab below the "AOL.COM" logo—shows several distinct printing errors:

3   (a) the "h" shows a distinctive rightward projection at the top of the far-right leg;

4   (b) the "o" contains an unusual void on the top left and (c) a squared corner on the

5   top right, (d) as well as an unusually fat bottom left quadrant; (e) the letter "p" has

6   unusually square corners at the top left and (f) top right, and (g) a deformation

7   jutting into the empty space in the middle of the "p" from the upper left, as well as

8   (h) a distortion that makes the lower leg of the "p" look more like a triangle than a

9   straight line.  *Id.* ¶¶ 36-37.

10   Each of these distortions (as well as other distortions) is present in the

11   framing elements of all three e-mails.  *Id.* ¶¶ 29-42.  When analyzed side by side,

12   these distortions align precisely.  *Id.* ¶¶ 37, 39, 41.



Comparison of purported May 9, 2000 e-mail with the subject line "Pitch" (white)
and purported May 9, 2000 e-mail with the subject line "Re: Pitch" (black).
Speckin Decl. ¶ 37.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

Whenever a document is printed, it contains subtle random distortions that make every copy of the document different from every other copy, even if two copies were printed in quick succession from the same source on the same computer using the same printer.  Speckin Decl. ¶ 31.  Here, the deformities present on each e-mail are identical, leaving no possibility other than that the documents were all manufactured from the same template.  *Id*. ¶¶ 35-42.  The framing elements were used three times, with different text inserted each time to create three different, inauthentic e-mails.  *Id*. ¶¶ 35-42.

## C. All Authors and Recipients of the Falsified Documents Deny Their Authenticity.

Every purported sender and recipient denoted on the documents—Mr. Zwick, Mr. Solomon, Mr. McCormick, and Mr. Logan—has verified under oath that he never sent or received any of the documents. Ex. 7 (Zwick Dep. Vol. 2 at 14:17-15:4; 20:15-23:3; 24:3-25:1; 32:15-19; 38:1-5; 40:12-41:1; 43:25-44:17); Ex. 10 (McCormick Dep. Vol. 1 at 40:4-25); Ex. 11 (Solomon Dep. Vol. 2 at 27:22-30:25); Ex. 12 (Logan Dep. Vol. 2 at 27:1-29:6; 31:7-32:16; 33:5-12).

## D. Plaintiffs or Their Agents Created the Falsified Documents.

Given that the documents are demonstrably false, the only question is who falsified them.  The evidence plainly points to plaintiffs or their agents—they are the *only* persons with the motive, access, and ability to have forged these documents and they are the *only* persons insisting on using these documents despite indisputable proof that they are fake.[6]  *See, e.g., In re Al Khenaizi*, No. 00-82698, ADV. 00-8140, 2001 WL 34076051, at *4-5 (Bankr. C.D. Ill. Apr. 3, 2001).  In *Al*

---

[6] Plaintiffs' own literary agent, David Phillips, confirmed as much, testifying that "whoever wrote [the anonymous] letter would have to have an intimate knowledge of the facts of the case, the players involved in the case, [and] the lawyers involved in the case," as well as an "axe to grind" with Warner Bros.  Ex. 13 (Phillips Dep. Vol. 2 at 166:6-167:6).  Mr. Phillips further confirmed that plaintiffs have an axe to grind with Warner Bros., and that it is "possible" that plaintiffs wrote the anonymous letter.  *Id*.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

*Khenaizi*, the court found plaintiff created a "manufactured false document."  The court first determined that a document sponsored by plaintiff was forged "using a cut and paste methodology," and then found that plaintiff had forged the document based, in part, on the fact that plaintiff "clearly had a motive to manufacture" and "had the opportunity to manufacture" the forged document.  *Id.* at *4-5.

### 1.  Motive:  Plaintiffs' Case Would Falter Without the Falsified Documents.

Prior to the arrival of the falsified documents, plaintiffs' one remaining claim—for breach of implied-in-fact contract—was likely to be dismissed on privity and/or independent creation grounds at summary judgment.  The Ninth Circuit's decision put plaintiffs on notice that privity and independent creation would be a hurdle.  *Benay*, 607 F.3d at 632, 634.  Plaintiffs did not have enough evidence to prove privity of contract or lack of independent creation.  The falsified documents are tailored to deal with both deficiencies.  They purport to show that Warner Bros. received a copy of the Benay Script from Mr. Cracchiolo and that Mr. Zwick received a copy of the Benay Script in May 2000 and showed it to Mr. Logan.  These are exactly the type of documents someone would have fabricated to help plaintiffs' case at exactly the time plaintiffs most needed help.

| Void in Plaintiffs' Case | Forged Evidence To Fill The Void |
|---|---|
| Plaintiffs have no independent evidence to confirm that Dave Phillips actually pitched the Benay Script to Rick Solomon at Bedford Falls on or around May 9, 2000. | • May 9, 2000 e-mail from Rick Solomon to Ed Zwick<br>• May 9, 2000 e-mail from Ed Zwick to Rick Solomon |
| Plaintiffs have no independent evidence to confirm that Rick Solomon at Bedford Falls requested a copy of the Benay Script on or after May 9, 2000. | • May 9, 2000 e-mail from Rick Solomon to Ed Zwick<br>• May 9, 2000 e-mail from Ed Zwick to Rick Solomon |

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

| **Void in Plaintiffs' Case** | **Forged Evidence To Fill The Void** |
|---|---|
| Plaintiffs have no independent evidence to confirm that Dave Phillips sent a copy of the Benay Script to Rick Solomon at Bedford Falls on or around May 16, 2000. | • May 9, 2000 e-mail from Rick Solomon to Ed Zwick<br>• May 9, 2000 e-mail from Ed Zwick to Rick Solomon<br>• May 17, 2000 fax from Ed Zwick to John Logan attaching pages from the Benay Script |
| Plaintiffs have no admissible evidence that Warner Bros. or Mr. Logan ever received a copy or heard of the Benay Script in 2000. Without this, plaintiffs' implied-in-fact contract claim against Warner Bros. and Mr. Logan will fail for lack of privity. | • May 25, 2000 e-mail from Kevin McCormick to Ed Zwick |
| Plaintiffs have no evidence that any author of *The Last Samurai* ever heard of or saw a copy of the Benay Script. Without this, plaintiffs will have a difficult time defeating defendants' independent creation defense. | • May 9, 2000 e-mail from Rick Solomon to Ed Zwick<br>• May 9, 2000 e-mail from Ed Zwick to Rick Solomon<br>• May 17, 2000 fax from Ed Zwick to John Logan attaching pages from the Benay Script |

In their recent deposition, plaintiffs touted the significance of these documents:

> Q. And when -- when you got the documents, what -- what was the conversation you had with your brother?
> A. We were shocked but at the same time unsurprised to receive the documents. We had always felt that there were gaps in correspondence among the defendants and to us the existence of these confirmed our suspicions about other documents existing.
> …
> Q. So these documents confirmed what you had believed for a long time?
> A. They did indeed.
> …
> A. … I think they fit exactly with our theory. I think they corroborate our theory.

Ex. 14 (A. Benay Dep. Vol. 2 at 154:1-9; 181:13-15; 222:25-223:2); *see also* Ex.

14 (A. Benay Dep. Vol. 2 at 154:1-17; 163:4-11, 166:18-25, 167:6-168:22, 180:7-

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

23, 195:9-196:18, 220:22-225:4); Ex. 15 (M. Benay Dep. Vol. 2 at 109:7-110:4, 150:10-12, 152:22-153:25).

### 2. Access and Ability:  Plaintiffs' Had Access to the Documents and Facts Necessary to Create the Forgeries.

Plaintiffs had access to all the records in this case and intimate knowledge of the facts and issues necessary to manufacture the documents.  As discussed above, the person who forged the documents had to have access to at least the April 19, 2000 fax with Mr. Zwick's signature (BB00861) and the May 19, 2000 fax with Mr. Zwick's handwritten notes (BF5193).  Only people involved in this litigation had ready access to those documents.

The forger also had detailed knowledge about the underlying facts of the case.[7]  For example:

- Plaintiffs allege their agent pitched the Benay Script to Mr. Solomon on May 9, 2000.  Ex. 16 (First Am. Compl. ¶¶ 18-19); Ex. 17 (A. Benay Rog. Responses at Rogs. 2, 3); Ex. 18 (M. Benay Rog. Responses at Rogs. 2, 3).  The two forged e-mails dated May 9, 2000—between Mr. Solomon and Mr. Zwick—discuss this alleged pitch.

- Plaintiffs allege their agent submitted the Benay Script to Mr. Solomon on May 16, 2000.  *Id*.  The forged May 17, 2000 fax from Mr. Zwick to Mr. Logan purportedly attaches pages from this script.

- On May 16, 2000, Mr. Logan faxed Mr. Zwick a letter discussing *Lawrence of Arabia* and its director David Lean.  Ex. 9 (BF5193).  The forged May 17, 2000 fax is a purported response to Mr. Logan's May 16 fax, specifically opening with "I've been turning over your analysis of Lawrence in my head" and referencing David Lean.

---

[7] Plaintiff Aaron Benay himself noted the documents "fit into the exact time frame of the development of . . . their Last Samurai in relation to the submission of our Last Samurai."  Ex. 14 (A. Benay Dep. Vol. 2 at 223:23-224:8).  *See also* Ex. 15 (M. Benay Dep. Vol. 2 at 152:4-16).

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1   • Plaintiffs recently asserted they submitted the Benay Script to Dan
2      Cracchiolo at Silver Pictures, Inc. on or around May 16, 2000, and that
3      that script was subsequently submitted to Warner Bros.  Ex. 15 (M. Benay
4      Dep. Vol. 2 at 126:14-22); Ex. 14 (A. Benay Dep. Vol. 2 at 169:24-
5      171:18).  The forged May 25, 2000 e-mail states that Warner Bros.
6      "do[es] have a submission from Dan Cracchiolo at Silver, THE LAST
7      SAMURAI."  Notably, Mr. Cracchiolo is not mentioned in plaintiffs'
8      complaint or any of the pleadings so only plaintiffs would even know of
9      his potential connection to the case.

10   Finally, plaintiffs used AOL.com e-mail addresses around 2000, and hence
11   had access to AOL.com e-mails with which to generate the forged e-mails.  Ex. 14
12   (A. Benay Dep. Vol. 2 at 182:2-13); Ex. 19 (A. Benay Dep. Vol. 1 at 89:7-13); Ex.
13   15 (M. Benay Dep. Vol. 2 at 146:13-15, 147:17-148:14).

14   **3.     Plaintiffs Failed to Fully Investigate the Documents.**

15   The Court specifically permitted plaintiffs to "subpoena AOL for e-mails
16   from the accounts of plaintiffs' proposed deponents."  Ex. 25 (Order Granting
17   Plaintiffs' Motion to Reopen Discovery and Setting the Trial Schedule).  Plaintiffs
18   failed to subpoena any documents from AOL.  Pearl Decl. ¶ 27.  If plaintiffs
19   genuinely believed the forged documents were genuine, they certainly would have
20   subpoenaed evidence to corroborate that fact.

21   **IV.   FULL DISMISSAL WITH PREJUDICE IS THE ONLY SANCTION
22        THAT WILL PROVIDE APPROPRIATE RELIEF.**

23   **A.     Terminating Sanctions are Appropriate.**

24   District courts have inherent power to dismiss an action when "a party has
25   engaged deliberately in deceptive practices that undermine the integrity of judicial
26   proceedings."[8]  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *see also*

27   _____
28   [8] Dismissal is also an appropriate sanction under Federal Rule of Civil
     Procedure 41(b) and Local Rules 11-9 and 83-7.

MOTION FOR TERMINATING SANCTIONS
     CV05-8508 PSG (FMOX)

1  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *Anheuser-Busch, Inc. v.*

2  *Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) ("inherent power to

3  dismiss . . . when a party has willfully deceived the court").

4        Courts regularly impose the sanction of dismissal for falsifying evidence.

5  *See, e.g., Greenburg v. Roberts Props., Ltd.*, 246 Fed. App'x. 500 (9th Cir. 2007)

6  (unpublished); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991)

7  ("Falsifying evidence is grounds for the imposition of the sanction of dismissal.");

8  *Prof. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d

9  1470, 1474 (9th Cir. 1984) ("The entry of a default judgment was appropriate . . . in

10  view of [defendant's] production of falsified documents."); *Amarkarian v. City of*

11  *Glendale*, No. CV 08-980-PSG(E), 2008 WL 2627824, at *4 (C.D. Cal. Jul. 3,

12  2008); *Emma C. v. Eastin*, No. C-96-4179, 2001 WL 1180638, at *2 (N.D. Cal.

13  Oct. 4, 2001) ("Fabricating documentary evidence is a litigation abuse and is

14  subject to inherent powers sanctions."); *Sun World, Inc. v. Olivarria*, 144 F.R.D.

15  384, 390 (E.D. Cal. 1992); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir.

16  1989) ("a federal district court judge can order dismissal or default where a litigant

17  has stooped to the level of fraud on the court"); *Greenburg v. Roberts Props., Ltd.*,

18  No. CV04-0001, 2005 WL 3536114, at *2 (D. Ariz. Dec. 22, 2005) (forging

19  documents "constitutes an affront to the administration of justice, and could result,

20  *at a minimum*, in the dismissal of this action with prejudice, the entry of default

21  judgment in Defendants' favor, an award of all fees and costs to Defendants, and

22  even a referral to the United States Attorney's Office for criminal investigation"

23  (emphasis added)); *Vargas v. Peltz*, 901 F. Supp. 1572, 1581 (S.D. Fla. 1995)

24  ("dismissal is the appropriate sanction where a party manufactures evidence which

25  purports to corroborate its substantive claims").  Most pointedly, courts impose

26  terminating sanctions for the use of manufactured documents <u>even when there is no</u>

27  <u>direct evidence that a party manufactured the document</u>.  *See Pope v. Fed. Express*

28

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

*Corp.*, 974 F.2d 982, 984 (8th Cir. 1992); *Forsberg v. Pefanis*, No. 1:07-cv-03116-JOF, 2009 WL 4798124, at *6 (N.D. Ga. Dec. 8, 2009).

Even assuming they did not themselves manufacture the documents, plaintiffs have nevertheless committed a sanctionable fraud on the Court by refusing to withdraw the knowingly false evidence. *See, e.g., Espinoza v. Nw. Univ.*, No. 02 C 7563, 2004 WL 416471, at *3-4 (N.D. Ill. Jan. 30, 2004) (sanctions warranted under Rule 11 against plaintiff who "continued to file falsified documents with the court" when the record "overwhelming suggest[ed] the documents [were] forgeries"); *McConnell v. Lassen Cnty.*, No. Civ. S-05-0909, 2009 WL 3365912, at *2-4 (E.D. Cal. Oct. 16, 2009) (sanctions warranted under 28 U.S.C. § 1927 when "plaintiffs were on notice . . . that the court had identified authentication problems with the copy of the letter they sought to introduce [yet] plaintiffs continued to proffer the copy of the letter in question [and] insisted upon litigating the admissibility of the document without any factual or legal support").

Plaintiffs' creation or use of fraudulent documents is unlawful—*see* 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1621 (perjury); 18 U.S.C. § 1623(a) (false material declaration or use of a false document); 18 U.S.C. § 1962 (RICO); CAL. PENAL CODE § 470(b) (forgery)—and easily falls within the range of conduct for which terminating sanctions are warranted.

### 1. Courts Routinely Enter Terminating Sanctions in Similar Situations.

Courts routinely enter terminating sanctions against litigants who, like plaintiffs, manufacture supporting evidence and perjure themselves in depositions.[9]

---

[9] Plaintiffs both falsely testified they were unaware of the origin of the documents and that those documents were likely authentic. Matthew Benay testified as follows: "Q. Had you ever seen that document before your attorney sent it to you? A. No. . . . Q. And when you received these documents initially, did you have any questions as to the veracity of the documents? A. No." Ex. 15 (M. Benay Dep. Vol. 2 at 106:17-19; 112:16-19); *see also id.* at 105:10-113:10; 160:12-161:19. Aaron Benay testified similarly: "Q. And where did this letter come from?

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

In *Sun World, Inc. v. Olivarria*, 144 F.R.D. 384 (E.D. Cal. 1992), the defendant intentionally created a false document featuring plaintiff's forged signature that could have altered the outcome of the litigation, submitted that document to the court, and testified at deposition in support of its authenticity. The court found that the defendant had "mocked the authority of [the] court and scorned its rules. . . . [Defendant] toyed with [the] court." *Id.* at 390. Considering the gravity of defendant's actions and the likelihood that he would continue to deceive the court going forward, the court granted terminating sanctions under its inherent authority, finding that any lesser sanction would "be an exercise in futility and operate as an ill-gotten reward for his despicable behaviour." *Id* at 391.

In *Pope v. Federal Express Corp.*, 974 F.2d 982, 983 (8th Cir. 1992), the district court relied on expert evidence that a document plaintiff had produced in discovery, and which appeared to have defendant's inculpatory handwritten notes on it, was instead "manufactured as a cut and paste composite of other documents." On this basis the district court "concluded that [plaintiff] lied during her . . . deposition when she stated, under oath, that the original document with the 'handwritten' innuendo, had been left on her desk, presumably by defendant. . . . The district court further ruled that [plaintiff] knew, before she produced the document, that it was a manufactured document, and that [plaintiff] produced the document with intent to mislead the court." *Id*. The district court entered terminating sanctions against plaintiff under Rule 11, and the Eighth Circuit affirmed, finding plaintiff's conduct was "an attempt to enhance the case through fraudulent conduct," which is sufficient grounds for dismissal. *Id* at 984*; see also*

---

A. I don't know. Q. And when did you first see this letter? A. After my attorney received this letter, he sent me a copy. . . . Q. Do you think this document is -- is legitimate? A. I have no question it is. Q. Do you think all of these documents are legitimate? A. I do." Ex. 14 (A. Benay Dep. Vol. 2 at 161:15-19; 220:22-221:2); *see also id*. at 154:22-155:15; 161:9-19; 220:22-225:4.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1   *Combs*, 927 F.2d 486 (dismissing case under Rule 11 and the court's inherent

2   authority as a sanction for giving false testimony on key subject matter).

3       In *Forsberg*, the court imposed terminating sanctions under its inherent

4   authority for use of a forged document even though the forged document (carrying

5   a cut-and-paste signature) had never been formally submitted to the court. 2009

6   WL 4798124, at *3-7. In fact, the court stated that dismissal was the *only*

7   appropriate sanction: "It is no punishment simply to rule that a party does not have

8   a right to use a document that it falsely prepared. The party never had a right to use

9   that document in the first place. Having determined that the issue was one of

10  integrity with the judicial system and related to such a vital incident in Plaintiff's

11  allegations, the court concluded that only the sanction of default would suffice." *Id.*

12  at *7; *see also Vargas*, 901 F. Supp. at 1579, 1581 (plaintiff's "intentional

13  misconduct in presenting false evidence in support of her claims compels dismissal

14  of [the] case").

15      In each of these cases—*Sun World*, *Pope*, *Combs*, *Forsberg*, and *Vargas*—a

16  district court was confronted with a litigant who knowingly and with the intent to

17  deceive the court created false evidence relevant to the parties' claims and

18  endeavored to use that evidence to the litigant's benefit. In each case, the district

19  court determined that terminating sanctions were the appropriate sanction for this

20  misconduct.[10] Plaintiffs followed exactly this course of conduct, making

21  terminating sanctions the appropriate sanction.

22          **2.    All Factors Favor Termination in This Case.**

23      To enter terminating sanctions, the Court must first find "willfulness, fault, or

24  bad faith." *Leon*, 464 F.3d at 958. Plaintiffs' illegal creation and use of the forged

25  documents—and their perjured testimony regarding the same— jeopardized the

26  _____

27  [10] The documents need not have been submitted into evidence in order for
    terminating sanctions to be appropriate; all that matters is that plaintiffs attempted
    to use the manufactured evidence to bolster their case. *See Forsberg*, 2009 WL

28  4798124, at *4 (*citing Pope*, 974 F.2d 982).

- 20 -                           MOTION FOR TERMINATING SANCTIONS
                                 CV05-8508 PSG (FMOX)

integrity of the judicial system and clearly represents "bad faith." *See Pope*, 974
F.2d at 984.

In addition to a finding of bad faith, a district court must weigh several
factors when considering terminating sanctions: "(1) the public's interest in
expeditious resolution of litigation; (2) the court's need to manage its dockets;
(3) the risk of prejudice to the party seeking sanctions; (4) the public policy
favoring disposition of cases on their merits; and (5) the availability of less drastic
sanctions." *Anheuser-Busch*, 69 F.3d at 348 (affirming entry of terminating
sanctions against defendant who concealed relevant documents and lied about their
existence and condition). "The list of factors amounts to a way for a district judge
to think about what to do, not a series of conditions precedent before the judge can
do anything." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d
1091, 1096 (9th Cir. 2007). Here, all factors favor termination.

1.  The Public Has an Interest in the Expeditious Resolution of This
Litigation.  This litigation has been ongoing since 2005.  Three of the initial four
claims have already been resolved, and plaintiffs' fabrication of new evidence to
support its final claim has only served to drag out litigation that should have already
concluded.  The public is not served by further prolonging this litigation.

2.  The Court's Docket Will Benefit from Dismissal.  Plaintiffs' creation and
use of the forged documents undermine the Court's ability to manage this case and
its own docket.  Plaintiffs already used the documents to reopen discovery and
prolong the litigation. *See Nat'l Corp. Tax Credit Funds III, IV, VI, VII v.
Potashnik*, No CV 07-3528 pSG (FMOx), 2010 WL 457626, at *6 (C.D. Cal. Feb.
4, 2010) (*citing Malone v. U.S. Postal Serv.*, 833 F.2d 128 (9th Cir. 1987)).  It
would be a waste of judicial resources to litigate this case any further.  The Court's
finite resources must be devoted to forthright litigants.

3.  Defendants Would Be Significantly Prejudiced If This Litigation
Continues.  Defendants are prejudiced where, as here, plaintiffs' actions threaten to

interfere with the rightful decision of the case. *See Leon*, 464 F.3d at 959; *Anheuser-Busch*, 69 F.3d at 353-54. Defendants are further prejudiced by having to litigate against plaintiffs who exhibit disregard for the integrity of the judicial process. *See Sun World*, 144 F.R.D. at 391. Plaintiffs' conduct calls into question whether other documents plaintiffs have produced—including a series of facially dubious unsigned cover letters not printed on letterhead[11]—are authentic. Pearl Decl. ¶ 25, Ex. 23 (BB03321, BB3346, BB3294). Plaintiffs have so muddied the waters of truth that defendants would be prejudiced by having to litigate this case further. *See Anheuser-Busch*, 69 F.3d 337 at 354; *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097.

4. Public Policy Does Not Require Additional Litigation in This Matter. Plaintiffs' case has been litigated for six years and has been adjudicated on the merits for three out of four claims for relief. The remaining claim is subject to dismissal for lack of privity. The public policy favoring resolution on the merits is not affected if a meritless claim is dismissed because of plaintiffs' fraud.

5. Lesser Sanctions Will Be Ineffective. Plaintiffs have demonstrated that they do "not take [their] oath to tell the truth seriously and . . . will say anything at any time in order to prevail in this litigation." *Anheuser-Busch*, 69 F.3d at 352. As such, there is little guarantee that if the Court were to impose lesser sanctions, plaintiffs' misconduct would cease. *See id.* Plaintiffs' deceptive conduct makes it impossible to conduct a trial with any reasonable assurance that the truth would be available. *See Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097. In such a circumstance, it is appropriate to reject lesser sanctions in favor of termination. *See id.*; *Anheuser-Busch*, 69 F.3d at 352.

In this case, monetary relief and evidentiary exclusion are unlikely to effectively deter misconduct by plaintiffs. Given the scope of plaintiffs' asserted

---

[11] Mr. Phillips testified that letters he sent while at Writers & Artists "should have been" on letterhead. Ex. 24 (Phillips Dep. Vol. 1 at 31:8-23; 125:2-9).

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1   damages—$100 million (Ex. 16 (First Am. Compl. ¶¶ 35, 49 and pages 11-12);

2   Ex. 17 (A. Benay Rog. Responses at Rog. 19); Ex. 18 (M. Benay Rog. Responses at

3   Rog. 19))—monetary sanctions would need to be enormous to be of significant

4   concern to the plaintiffs.  It is also unclear whether plaintiffs would be able to pay

5   any monetary sanctions.  And merely prohibiting the use of the forged documents at

6   trial "does nothing to preserve the integrity of the judicial system or deter other

7   litigants from such behavior."  *Forsberg*, 2009 WL 4798124, at *7.  "Permitting

8   this lawsuit to proceed would be an open invitation to abuse the judicial process.

9   Litigants would infer they have everything to gain, and nothing to lose, if

10   manufactured evidence merely is excluded while their lawsuit continues.  Litigants

11   must know that the courts are not open to persons who would seek justice by

12   fraudulent means."  *Vargas*, 901 F. Supp. at 1582.

13                                    *   *   *

14         The *Anheuser-Busch* factors strongly favor terminating sanctions.  The most

15   critical consideration—"whether a party's . . . violations make it impossible for a

16   court to be confident that the parties will ever have access to the true facts"—also

17   favors termination.  *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097.  This is more than

18   sufficient grounds to grant terminating sanctions.  *See Yourish v. Cal. Amplifier*,

19   191 F.3d 983, 990 (9th Cir. 1999) (the Ninth Circuit may affirm dismissals "where

20   at least four factors support dismissal, or where at least three factors strongly

21   support dismissal").

22         **B.     Attorneys' Fees and Costs Are Appropriate.**

23         Courts have inherent authority to assess attorneys' fees and costs as a

24   sanction when "a party has acted in bad faith, vexatiously, wantonly, or for

25   oppressive reasons. . . .   [I]f a court finds that fraud has been practiced upon it, or

26   that the very temple of justice has been defiled, it may assess attorney's fees against

27   the responsible party."  *Chambers*, 501 U.S. at 45-46; *see also Leon*, 464 F.3d at

28

961.  Attorneys' fees are also an appropriate sanction under Local Rules 11-9 and 83-7.

As discussed above, plaintiffs' actions constitute unquestionable bad faith. Defendants are entitled to all attorneys' fees and costs associated with investigating the falsified documents and the anonymous letter, as well as all fees and costs resulting from reopened discovery.  *See Greenburg*, 246 Fed. App'x. 500 (upholding attorneys' fees sanction for attaching forged documents to a court filing); *Sun World*, 144 F.R.D. at 391 (assessing attorneys' fees sanction for all "costs and attorney's fees incurred by [plaintiff] resulting from and relating to [a] fraudulent document").  Fees and costs are particularly appropriate where, as here, defendants put plaintiffs on clear and direct notice that evidence they are sponsoring is false.  *See McConnell*, 2009 WL 3365912 at *3-4.  In less extreme cases, plaintiffs have been sanctioned and required to pay attorneys' fees when they simply relied on documents they claim to have received anonymously in the mail without first verifying those documents' authenticity.  *See Espinoza*, 2004 WL 416471.

## C.   In the Alternative, the Documents Must Be Excluded and the Jury Instructed as to the Fake Evidence.

### 1.   Evidentiary Sanctions.

Authentication is a "condition precedent to admissibility" of evidence, satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims."  FED. R. EVID. 901(a).  Since the documents are forged and not authenticated[12], plaintiffs should be precluded from making use of, or reference to, the anonymous letter and the falsified documents.  *See Orr v. Bank of Am.*, 285 F.3d 764, 777-78 (9th Cir. Cal. 2002) (affirming district court's exclusion

---

[12] As discussed at pages 15-18 of Moving Defendants' recent Motion for Summary Judgment (Docket No. 271), the documents cannot be authenticated.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1  of letters plaintiff attempted to use in opposition to summary judgment because

2  they were not properly authenticated).

3  ### 2.    Jury Instructions Concerning Plaintiffs' Misconduct.

4  At any trial, the jury should be informed that (a) plaintiffs willfully falsified

5  documents to support their positions in this litigation; (b) plaintiffs willfully

6  engaged in a pattern of illegal activity and misconduct in connection with this

7  litigation; (c) plaintiffs willfully misled the Court and defendants; (d) plaintiffs

8  knowingly offered false testimony; and (e) the jury may consider these facts in

9  drawing inferences at trial and in assessing the credibility of plaintiffs and their

10  witnesses.

11  ## V.    CONCLUSION

12  Plaintiffs' forgery, perjury, and attempts to deceive the Court were unlawful

13  acts designed to undermine the integrity of this judicial proceeding.  For all of the

14  reasons stated above, Moving Defendants respectively request this action be

15  dismissed with prejudice and attorneys' fees and costs be awarded.

16
17  Dated:   December 21, 2011          O'MELVENY & MYERS LLP

18
19          By:    /s/ Daniel M. Petrocelli
                   Daniel M. Petrocelli

20
21          Attorneys for Defendants WARNER
            BROS. ENTERTAINMENT, INC. and
            JOHN LOGAN

22
23
24
25
26
27
28

- 25 -

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1

## <u>Appendix A</u>

2

| | **May 19, 2000 fax (BF5193)** | **The forged fax** |
|---|---|---|
| 1. |  |  |
| 2. |  |  |
| 3. |  |  |
| 4. |  |  |
| 5. |  |  |
| 6. |  |  |

| | May 19, 2000 fax (BF5193) | The forged fax |
|---|---|---|
| 7. |  |  |
| 8-9. |  |  |
| 10. |  |  |
| 11. |  |  |

Speckin Decl. ¶ 22.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1

## **<u>Appendix B</u>**

2

### 1.    "NEED"





Falsified screenplay excerpts at 1 in white, BF5193 at BF5196 in black

1

## 2.   "OUR HERO" / "OUR HERO'S"







Falsified screenplay excerpts at 1 in white, BF5193 at BF5193 in blck

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1

### 3. "ASKED TO"







Falsified screenplay excerpts at 2 in white, BF5193 at BF5196 in black

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

### 4.    "GO" / "SAIGO"







Falsified screenplay excerpts at 2 in white, BF5193 at BF5199 in black

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1

### 5.   "LOVE"







Falsified screenplay excerpts at 3 in white, BF5193 at BF5193 in black

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

6.     "THIS"



Falsified screenplay excerpts at 3 in white, BF5193 at BF5198 in black

7.      "HERO"







Falsified screenplay excerpts at 3 in white, BF5193 at BF5198 in black

- 7 -

1

### 8.   "THE"







Falsified screenplay excerpts at 5 in white, BF5193 at BF5199 in black

### 9. "EMPEROR"







Falsified screenplay excerpts at 5 in white, BF5193 at BF5199 in black

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

1  10.   "VS."







Falsified screenplay excerpts at 5 in white, BF5193 at BF5196 in black

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)

### 11.   "SAIGO"



Falsified screenplay excerpts at 5 in white, BF5193 at BF5193 in black

All images in Appendix B are from Speckin Decl. ¶¶ 24.

MOTION FOR TERMINATING SANCTIONS
CV05-8508 PSG (FMOX)