Link  271 thru 275

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(In Chambers) DENYING Defendants' motion for terminating or other sanctions, GRANTING Defendants Warner Bros. and John Logan's Motion for Summary Judgment, and DENYING Defendants Bedford Falls, Edward Zwick and Marshall Herskovitz's Motion for Summary Judgment**

Pending before the Court are Defendants Warner Bros. and John Logan's motion for summary judgment, Defendants The Bedford Falls Company, Edward Zwick, and Marshall Herskovitz's motion for summary judgment, and the Defendants' joint motion for terminating or other sanctions. The Court heard oral argument on February 13, 2012.  After considering the moving and opposing papers, as well as arguments made by counsel, the Court DENIES the joint motion for terminating sanctions, GRANTS Warner Bros. and John Logan's motion for summary judgment, and DENIES Bedford Falls, Edward Zwick and Marshall Herskovitz's motion for summary judgment.

I.   Background

Between 1997 and 1999, Plaintiffs Aaron and Matthew Benay ("Plaintiffs," or "the Benays") wrote a screenplay, *The Last Samurai* ("the Benay Screenplay").  The Benay's registered the Screenplay with the Writers Guild of America in 1999 and with the federal copyright office on February 23, 2001.  The Benays' literary agent, David Phillips, "pitched" the Screenplay to the president of production at Defendant Bedford Falls, Richard Solomon, on the telephone sometime between May 9, 2000, and May 12, 2000.  According to Phillips, he provided Solomon with the Screenplay with the implicit understanding that if Bedford Falls used

Link 271 thru 275

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

it to produce a film, the Benays would be appropriately compensation. Solomon later informed Philips after receiving the Benay Screenplay that Bedford Falls had decided to "pass" because they had a similar project in development. That "similar project" eventually became the film, *The Last Samurai* ("the Film").

The Benays contend that the creators of the film copied from the Screenplay without permission. On December 5, 2005, Plaintiffs sued Warner Brothers Entertainment, Inc. ("Warner Bros."), Radar Pictures, Inc.,[1] The Bedford Falls Company, erroneously sued as Bedford Falls Productions, Inc. ("Bedford Falls"), Edward Zwick, Marshall Herskovitz, and John Logan, who wrote, produced, marketed, and/or distributed the Film, asserting claims for copyright infringement and breach of an implied-in-fact contract.

On March 14, 2008, the Court granted summary judgment for Defendants and Plaintiffs appealed. The Ninth Circuit upheld the Court's decision with respect to the copyright infringement claim, but reversed on the implied in fact contract claim. *See Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620 (9th Cir. 2010). On remand, Plaintiffs' only remaining claim is for breach of an implied-in-fact contract against Warner Bros., Bedford Falls, Edward Zwick, Marshall Herskovitz, and John Logan (collectively, "Defendants").

Just days before the first scheduling conference following remand was to take place, counsel for all parties received copies of an anonymous letter attaching what purported to be three e-mails amongst the Defendants discussing the Benay's submission and a fax conveying notated excerpts from the Benay Screenplay. *See Pearl Mot. for Sanctions Decl.*, Ex. 3. On June 13, 2011, the Court authorized limited discovery for purpose of determining the origin, authenticity and relevance of the anonymous mailing. *See* Dkt. # 260.

After the close of re-opened discovery, Defendants filed the present motions for summary judgment, as well as a motion for terminating or other sanctions on the grounds that Plaintiffs or their counsel falsified the anonymous mailing.

II. Terminating or Other Sanctions

---

[1]Plaintiffs stipulated to the dismissal of Radar Pictures, Inc. on July 28, 2011. *See* Dkt. # 265.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

Defendants seek terminating sanctions in light of forensic evidence that they claim establishes the new documents are forgeries. In support of their motion, Defendants offer the expert testimony of Erich Speckin that the all of the handwriting found on the script pages and Zwick's signature on the fax cover sheet were mechanically copied from documents produced during discovery. *See Speckin Decl.* ¶¶ 13-26. Mr. Speckin also points to errors on the three emails suggesting they were fraudulently created using a blank AOL email template. *See id.* ¶¶ 27-42. Specifically, all three emails are erroneously time-stamped "Pacific Standard Time" instead of "Pacific Daylight Time," and all three contain the same subtle printing errors that purportedly show they were manufactured using a single blank template. *Id.*

In addition to Mr. Speckin's declaration, Defendants' point to the fact that the documents are aimed at plugging holes in the Plaintiffs' case highlighted by the Ninth Circuit, and appeared in an anonymous mailing just days before the first status conference on remand. *See Pearl Mot. for Sanctions Decl.* ¶ 4. Taken together, Defendants argue this circumstantial evidence establishes that the documents were prepared by someone with intimate knowledge of the case, access to the Court record and documents produced during discovery, and a motive to fabricate the new evidence. Based on this showing, Defendants urge the Court find that Plaintiffs created and sent the fraudulent documents and/or improperly sought to reopen discovery with knowledge that they were false, and therefore impose terminating sanctions.

District courts have the inherent power to dismiss an action where a party "has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Falsifying evidence of central importance in connection with a motion for summary judgment is grounds for the imposition of the sanction of dismissal. *See Combs v. Rockwell Intern. Corp.*, 927 F.2d 486, 488 (9th Cir. 1991).

The Court finds that Defendants have made an insufficient showing of culpability on the part of Plaintiffs' or their counsel to warrant sanctions. Although the circumstances, content, and timing of the anonymous mailing are suspicious and Defendants have made a strong showing regarding their falsity, *see Speckin Decl.* ¶ 43, there simply is not enough evidence that Plaintiffs authored the documents, sent them to Defendants' counsel, or sought to reopen discovery with the knowledge that they were false. *Cf. Prof. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1474 (9th Cir. 1984) (granting default judgment where a defendant produced falsified documents).

Plaintiffs have not admitted that they falsified the documents and have not abjectly perjured themselves in attesting to their origin. *Cf. Leon*, 464 F.3d at 958 (upholding

Link 271 thru 275

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

terminating sanctions where Plaintiff admitted to deleting an entire directory of personal files from his computer prior to production after having been admonished to "ensure no data on the laptop is lost or corrupted"); *Combs*, 927 F.2d at 488 (finding dismissal appropriate where Plaintiff authorized counsel to alter his deposition in material respects, signed the revised deposition, and swore, under penalty of perjury that he had reviewed the transcript and had himself made the fraudulent changes); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 389 (E.D. Cal. 1992) (imposing sanction of dismissal where Defendant admitted at an evidentiary hearing that a court filing was fraudulent); *Anheuser-Busch, Inc. v. Natural Beverage Dist.*, 69 F.3d 337, 348-49 (9th Cir. 1995) (affirming dismissal under inherent power in light of "overwhelming evidence" of plaintiff's abject perjury). While Plaintiffs stated that they believed the documents were authentic, they acknowledged that they did not "know with 100% certainty," *see Pearl Mot. for Sanctions Decl.*, Ex. 15, at 112:16-24, and admitted that they did not know where the documents came from. *See id.*, Ex. 14, at 114:15-16.

Defendants point to an Eighth Circuit decision for the proposition that the Court may impose terminating sanctions for the use of manufactured documents even when there is no direct evidence that a party manufactured the documents. *See Pope v. Federal Exp. Corp.*, 974 F.2d 982 (8th Cir. 1992). *Pope* is distinguishable in that there the court determined that although the plaintiff knew a document had been manufactured, she nonetheless "produced [it] with intent to mislead the court" and lied under oath regarding its origin. *Id.* The Court also found that Plaintiff's counsel had notice that her client was testifying falsely, and that the document had been falsified, yet continued to refer to and rely on it in subsequent pleadings. *Id.* at 984.

Here, there is insufficient evidence to conclude that Plaintiffs "produced" the document, which was sent anonymously, or that Plaintiffs knew the documents were false when they sought to reopen discovery. As discussed above, Plaintiffs did not invent a fraudulent origin story at their depositions, and have not attempted to rely on the questionable documents in opposing Defendants' motion for summary judgment, or in connection with a pleading that required Plaintiffs' counsel to "make a reasonable inquiry into the [documents] validity" under Rule 11. *See Pope*, 974 F.2d at 984. The documents were filed with the Court only in connection with a motion to reopen discovery for the limited purpose of exploring their authenticity and relevance to the litigation. Because the evidence does not establish that the fraud originated with Plaintiffs or that Plaintiffs, with knowledge of falsity, improperly produced, relied on, verified, or sought to mislead the Court through the use of the documents, the Court finds sanctions unwarranted.

In the alternative, Defendants seek an order that the documents be excluded and the jury instructed as to Plaintiffs' reliance on the purportedly fake evidence. *See Mot. for Sanctions*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

24:17-25:10. Because Plaintiffs have not relied on documents and there is insufficient evidence they created them, the Court will not give the requested instruction. And as a motion in limine to exclude the anonymous letter and forged documents has already been filed, *see* Dkt. #301, the Court defers its ruling on the question of admissibility.

### III. Summary Judgment

Federal Rule of Civil Procedure 56(a) establishes that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment not only as to an entire case, but also as to a claim, defense, or part of a claim or defense. *Id.* The movant bears the initial burden to demonstrate the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies the burden, the nonmovant must set forth specific evidence showing that there remains a genuine issue for trial, and "may not rest upon mere allegation or denials of his pleading." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

An issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson*, 477 U.S. at 249-50. A party asserting that a fact cannot be genuinely disputed, must support that assertion by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party may object that material cited would not be admissible in evidence. *See id.* 56(c)(2). Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show that the declarant or affiant is competent to testify on the matters stated. *See id.* 56(c)(4).

### A. Breach of Implied-in-Fact Contract

Contract law, whether through express or implied-in-fact contracts, is the most significant remaining state-law protection for literary or artistic ideas. *Benay*, 607 F.3d at 629. Contract claims for the protection of ideas are not preempted by copyright law if they allege an "extra element." *Id.* (citing *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004)). Generally, and here, the "extra element" in question is the "bilateral expectation of compensation." *See id.*

Link  271 thru 275

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

To establish a case for breach of an implied-in-fact contract based on the submission of their Screenplay, the Benays must establish that: (1) they submitted the Screenplay for sale to Defendants; (2) they conditioned the use of the Screenplay on payment; (3) Defendants knew or should have known of the condition; (4) Defendants voluntarily accepted the Screenplay; (5) Defendants actually used the Screenplay; and (6) the Screenplay had value.  *Benay*, 607 F.3d at 629 (citing *Mann v. Columbia Pictures, Inc.*, 128 Cal. App. 3d 628, 647 n.6, 180 Cal. Rptr. 522 (1982)).

With the exception of Bedford Falls, all Defendants seek summary judgment on Plaintiffs' implied-in-fact contract claim under the same two theories.  *See WB MSJ Mot.*; *BF MSJ Mot.*; *WB Joinder in BF MSJ*, Dkt. # 273.  First, Defendants contend that Plaintiffs' cannot establish privity with each of them by admissible evidence.  Second, Defendants claim the statute of limitations began to run prior to the general release of the Film, and therefore expired prior to Plaintiffs' initiation of suit exactly two years later.  Bedford Falls seeks summary judgment only on the statute of limitations.  Construing the admissible evidence and inferences in Plaintiffs' favor, the Court finds as follows.

      1.     Privity

"Privity between the Parties is a necessary element of an implied-in-fact contract claim." *Benay*, 607 F.3d at 634 (citing *Rokos v. Peck*, 182 Cal. App. 3d 604, 617-18, 227 Cal. Rptr. 480 (1986); *Mann*, 128 Cal. App. 3d at 647 n. 6).  "[T]he creation of an implied-in-fact contract between an author, on the one hand, and an agent, producer or director, on the other hand, is of such a personal nature that it is effective only between the contracting parties....A cause of action for breach of an implied-in-fact contract bears upon the relationship between the individual parties and make breaches of such agreements actionable between parties because of the nature of their *personal relationship*." *Rokos*, 182 Cal. App. 3d at 617-18.  "Unlike a copyright, a contract...is effective only between the contracting parties; it does not withdraw the idea from general circulation.  Any person not a party to the contract is free to use the idea without restriction." *Chandler v. Roach*, 156 Cal. App. 2d 435, 441 (1957).

In "many idea-submission cases, the party who allegedly used the plaintiff's idea is not the same one to whom the idea was submitted.  In these cases, there are limits on the reach of [contract claims]....[A] contract action will fail if the person to whom the plaintiff submitted the idea was not authorised - actually or apparently - to enter into contracts on behalf of the defendant." 4 MELVILL B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 19D.05[C] (2011) ("NIMMER").

Link  271 thru 275

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

Because the privity inquiry is unique to the various Defendants, the Court will analyze each in turn.

      a.     <u>Warner Bros.</u>

Plaintiffs advance two theories of privity with respect to Warner Bros.  First, Plaintiffs contend privity was created retroactively when, in 2003, the Benays then-attorney Glen Kulik sent Warner Bros. a demand letter summarizing their dealings with Bedford Falls and attaching a series of letters Mr. Kulik had sent to Bedford Falls' counsel.  The demand letter indicates that Plaintiffs' "primary claims are against Bedford Falls," but that "any lawsuit that is filed would inevitably involve a claim for copyright infringement against all participants in the film including Warner Bros." *See Marder WB MSJ Decl.*, Ex. 13.  The letter also attaches the Benays' Screenplay and the Writer's Guild and copyright registrations. *See id.* According to Plaintiffs, Mr. Kulik's communication created privity "by warning Warner and Logan that Bedford Falls and its owners were in possession of the Benays' script and thus any contributions from anyone at Bedford Falls to Logan or Warner originated with the Benays." *See Opp. to WB MSJ*, 14:4-7.  Plaintiffs contend that this admonition created privity if and when Warner Bros. and Logan decided to accept any contribution from Bedford Falls, by ratifying the implied-in-fact contract within the meaning of Cal. Civil Code § 1588, accepting the benefit of the transaction as provided by Cal. Civil Code § 1589, or engaging in activity demonstrating acceptance of its terms as stated in Cal. Civil Code § 2426. *See id.*, 14:10-14.

Second, Plaintiffs claim that privity exists based on Phillips' submission of the Screenplay to Dan Cracchiolo.  Mr. Cracchiolo was employed by Silver Pictures, a production company located on the Warner Bros. studio lot that operated under an exclusive contract with Warner Bros.  Under the terms of Silver Pictures and Warner Bros.'s exclusive agreement, if Silver Pictures wanted to produce a film, it would have to be produced with Warner Bros. *See Marder WB MSJ Opp. Decl.*, Ex 21, 42:21-24.  In light of this agreement, the parties dispute whether Silver Pictures may be properly classified as an "independent" production company.

Defendants object to both theories on the merits and on the grounds that their legal and factual basis was not asserted in the original Complaint, the First Amended Complaint ("FAC"), Plaintiffs' interrogatory responses, the Benays 2007 depositions, or the declarations submitted in this action.  The Court agrees that the FAC does not articulate any theory of privity with respect to Warner Bros. or Logan, and that neither Mr. Cracchiolo nor Silver Pictures are mentioned. *See* FAC ¶¶ 37-49.  The only nonconclusory allegations pleaded with respect to privity under the

Link  271 thru 275

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

implied in fact contract claim are that "[o]n or about May 9, 2000, at Plaintiffs' direction, [Phillips] orally pitched the Screenplay to the production company Bedford [Falls], and to Zwick and/or Herskovitz as individuals, as well as various other producers," and that, on May 16, Phillips submitted the entire Screenplay to Bedford Falls, Zwick, and Heskovitz after they expressed interest.  *See id.*

The Court agrees that Plaintiffs' eleventh-hour attempt to assert new theories of privity as to Warner Bros. and Logan should not be considered.  "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."  *See Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (noting that "the necessary factual averments are required with respect to each material element of the underlying legal theory") (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir.1990)).

Although *Wasco* involved a failure to plead a civil conspiracy claim asserted in defense to a motion for summary judgment on the statute of limitations, and therefore invoked the heightened pleading requirements of Rule 9(b), the Court sees no reason why the same principle should not apply when, as here, Plaintiffs' pleadings with respect to the new theories fail to satisfy Rule 8 and *Twombly*.  Defendants were entitled to a pleading that provided them with "fair notice of what [the Plaintiffs'] claim is and the grounds upon which it rests," including factual allegations sufficient "to raise a right to relief above the speculative level."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  Plaintiffs' "initial failure to satisfy [their] burden in no way obligates the district court to allow the parties an opportunity to offer matters outside the pleadings" on summary judgment.  *Fleming*, 922 F.2d at 24.

Moreover, insofar as the FAC alleges that Phillips sent the Screenplay to "various other producers," Defendants propounded interrogatories asking Plaintiffs to identify the "other producers" to whom they or their agents pitched their script.  *See Pearl WB MSJ Mot. Decl.*, Exs. T, U ("Interrogatory No. 2:  Identify all of the "other producers" to whom you or your agent pitched the screenplay...").  Interrogatory No. 3 called for Plaintiffs to disclose the date on which Plaintiffs or their agent pitched the script to each of the producers listed in response to Interrogatory No. 2.  Plaintiffs responded with a list of producers and dates that did not include Cracchiolo or Silver Pictures.  *See id.*  Despite their reliance on Phillips' alleged submission to Mr. Cracchiolo and Silver Pictures in opposing summary judgment, Plaintiffs still have not amended their responses to Interrogatory Nos. 2 and 3.

Instead, Plaintiffs argue they were not required to amend their interrogatory responses for several reasons.  First, they claim that the 2003 pre-litigation demand letter sent to Warner Bros.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

put Defendants on notice regarding their theory of privity through Cracchiolo and Silver Pictures. Plaintiffs claim that the 2003 demand letter attached Aaron Benay's list of "desired points of contact" and "Phillips' list of everyone he sent the screenplay to." *See Opp. to WB MSJ*, 5:25-28; *Marder MSJ Opp. Decl.*, Exs. 7, 8. However, Plaintiffs' exhibits 13 and 14, which purportedly contain the pre-litigation correspondences between Kulik and Warner Bros., do not include these two documents, nor does the 2003 demand letter disclose Plaintiffs' privity theory for breach of implied-in-fact contract against Warner Bros. *See Marder WB MSJ Opp. Decl.*, Exs. 13, 14. In fact, the 2003 demand letter indicates that Plaintiffs' "primary claims" will be against Bedford Falls based on their submission to those defendants and references Warner Bros.'s liability only in connection with a potential copyright infringement action that "would necessarily be brought against all participants in the film." *See id.* at Ex. 13. Likewise, a draft complaint attached to the demand letter states a copyright infringement claim against "all defendants," but a breach of implied-in-fact contract claim only against Bedford Falls. *See id.* As in the FAC, the beach of implied-in-fact contract claim arises solely from Plaintiffs' submission to Bedford Falls. Accordingly, nothing in this correspondence put Defendants on notice as to Plaintiffs' privity theory or otherwise relieved Plaintiffs of their obligation to supplement their interrogatory responses.

Next, Plaintiffs argue that the point of contacts list, the "list of everyone Phillips submitted the Screenplay to," and a submission cover letter addressed to Cracchiolo produced as part of Plaintiffs' initial disclosures and attached as exhibits to Aaron Benay's deposition relieved Plaintiffs of their duty to amend their pleadings and interrogatory responses. *See WB MSJ Opp.* 6:5-10; *Marder WB MSJ Opp. Decl.* Exs. 7-9. While the point of contacts list includes Joel Silver's name and Cracchiolo appears on Phillips' list, the documents on their face are nothing more than handwritten lists containing dozens of names. The submission cover letter addressed to Cracchiolo has not been signed and there is no indicia that it was ever mailed or otherwise delivered. In sum, the documents are silent on the question of whether the Screenplay was actually sent to Cracchiolo or Silver Pictures, and Defendants were entitled to assume that Plaintiffs' response to a direct Interrogatory on the topic was accurate and complete. Plaintiffs do not explain how the attachment of these documents to Aaron Benay's deposition disclosed Plaintiffs legal theory of privity or Philips' submission to Cracchiolo, and the Court will not comb through the voluminous record in search of the answer. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Finally, the Court is urged to overlook the lack of notice regarding Plaintiffs' theory of privity through Cracchiolo because Defendants elected not to depose Phillips. But it is Plaintiffs' burden under Rule 8 to adequately plead the basis for their claims and Plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

obligation under Rule 37(c) to supplement discovery responses which they know to be incomplete.  *See* Fed. R. Civ. P. 37(c) ("Failure to Disclose or Supplement.  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").  The Court acknowledges that Defendants would have been unable to depose Mr. Cracchiolo in any event, as he passed away prior to the initiation of this lawsuit.  Nonetheless, Defendants were denied the opportunity to propound written discovery requests on the Plaintiffs and Silver Pictures, as these methods were unavailable during the period when limited discovery was reopened.

Plaintiffs' alternative theory that privity was created retroactively by the 2003 demand letter suffers from the same deficiency.  Interrogatory No. 6 asked plaintiffs to state all facts showing they "disclosed the screenplay 'to Defendants for compensation and did so under circumstances from which it could be concluded that Defendants voluntarily accepted the disclosure knowing the conditions on which it was tendered.'"  *See Pearl WB MSJ Mot. Decl.*, Exs. T, U.  Plaintiffs responses do not identify the 2003 demand letter, have not been amended, and Defendants contend they did not receive notice of this new legal theory until Plaintiffs' opposition was filed on January 18, 2012.  *See Reply to WB MSJ*, 11:1-4.  Plaintiffs offer no justification for their failure to augment their responses or amend their pleading.  Accordingly, the facts and legal theories not pleaded in the FAC and not disclosed in Plaintiffs' discovery responses will not be considered.  *See Walker v. T-Mobile USA*, 298 Fed. Appx. 665, 667 (9th Cir. 2008) (holding no abuse of discretion where court excluded affidavits from two witnesses plaintiff failed to identify in response to defendant's interrogatories).

Because Plaintiffs fail to raise a triable issue of fact regarding privity with Warner Bros., Warner Bros. is entitled to summary judgment on Plaintiffs' implied-in-fact contract claim.

        b.      <u>John Logan</u>

Plaintiffs' only theory of privity individually articulated as to Logan is that "if submission of the Benay [Screenplay] to Zwick is a fact for the purposes of this motion, then the circumstantial evidence [of the similarities between the Benay Screenplay and the Film,] would lead a reasonable mind to believe Zwick shared the Benay's screenplay with Logan and Logan copied large amounts of it."  *See Opp. to WB MSJ*, 24:7-10.  While this allegation could have supported a claim for copyright infringement against Logan had the Defendants appropriated the protectable elements in the Benay's work, it does not establish the "extra element" necessary to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

avoid preemption and give rise to an implied-in-fact contract with Logan directly, *see Benay*, 607 F.3d at 629, nor does it explain how Logan and Plaintiffs were in privity with one another.

Faced with a similar set of circumstances, the California Court of Appeals in *Donahue v. Ziv Television Programs, Inc.*, upheld a judgment notwithstanding the verdict in favor of a writer/producer, while reversing as to the television company that employed him on the existence of the underlying implied-in-fact contract. *See* 245 Cal. App. 2d 595, 54 Cal. Rptr. 130 (1996). The Court of Appeals reasoned that because the writer/producer was paid a salary plus a participation in the "gross," there was nothing to indicate that he and the television company were partners or joint venturers. *See id.* Therefore, although the writer/producer was an employee of the television company when the idea was submitted, "[i]t was not he who before or at the time of the submission impliedly promised to pay and certainly he, at no time, made any express promise." *Id.* On these facts, the Court of Appeals could "see no difference - at least on a contract theory - between him and, say, a cameraman who was hired on the same terms and who knew at the time of hiring that [the television company] did not intend to keep its contract with plaintiffs."

Plaintiffs allegations with respect to Logan mirror those against the writer/producer in *Donahue*. Plaintiffs do not argue that Logan and Bedford Falls were joint venturers or partners, and instead indicate that Logan was paid to write the script. *See Opp. to WB MSJ*, 25-6-7. As in *Donahue*, "[c]onstruing the evidence most favorably, there is a submission to [Bedford Falls,] an implied promise by [Bedford Falls] to pay if the idea was used, and a later employment of [Logan] under circumstances which indicate that at the time of the employment [Logan] was aware of [Bedford Falls'] obligation to plaintiffs." *See id.* at 607.

Because under *Donahue*, these facts are insufficient to establish a privity even when the writer/producer attempts to take credit for the work, s*ee id.*, summary judgment on Plaintiffs' breach of implied-in-fact contract claim is granted as to Defendant Logan.

   c. <u>Zwick and Herskovitz</u>

Defendants argue that because there is no evidence that Plaintiffs submitted the Screenplay to Zwick or Herskovitz in their individual capacities, Plaintiffs cannot establish privity with Zwick and Herskovitz, as distinct from Bedford Falls, as a matter of law. It is undisputed that neither Plaintiffs nor Phillips ever spoke directly with Zwick or Herskovitz, and that Phillips' orally pitched and submitted the Screenplay through Solomon, the former President

Link 271 thru 275

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

of Bedford Falls. Defendants claim that Solomon was not employed by Zwick or Heskovitz "in their personal capacities," was not their agent, and did not work directly for either of them.

The Court finds that triable issues of fact prevent a determination that Solomon was not actually or apparently authorized to accept submissions for Zwick and Herskovitz's as individuals. Actual agency exists when "the agent is really employed by the principal." Cal. Civ. Code § 2299. Ostensible agency exists when a principal "causes a third person to believe another to be his agent." Cal. Civ. Code § 2300. "The existence of an agency relationship is a factual question for the trier of fact," unless the underlying facts are undisputed. *See Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.*, 148 Cal. App. 4th 937, 965 (2007).

Construing the facts in Plaintiffs' favor, Solomon stated at deposition that Zwick and Herskovitz "were the principals of the company, the owners of the company," and that his duties as an employee included soliciting material for Bedford Falls as a production company, but also "as a vehicle for [Zwick and Herskovitz] as writers, as a vehicle for them as directors." *See Pearl WB MSJ Decl.*, Ex. Q, 7:9-8:1. Mr. Solomon further stated that he would look at submissions from a "multi-faceted" point of view, meaning that he would look at properties in order to determine whether Zwick or Herskovitz would be interested in directing, producing, or taking some other role in them. *See id.* at 7:20-8:9. Zwick and Herskovitz described themselves and each other as "partners" in Bedford Falls. *See Marder BF MSJ Opp. Decl.*, Ex. 2, 18:12-15, 21:9-11, 43:9-15; Ex. 3, 15:19-20, 35:6-8. Solomon admits that he reported directly to Zwick and Herskovitz, *see Marder BF MSJ Opp. Decl.*, Ex. 1, 15:15-18, but now states that he "has never been authorized to accept a script or other submission on behalf of [Zwick or Herskovitz] in their personal capacities." *See Solomon BF MSJ Mot. Decl.*, ¶ 3.

Drawing the inferences in Plaintiffs' favor, a trier of fact could conclude that these statements are in conflict and that Solomon was authorized to accept submissions on behalf of Zwick and Herskovitz individually as writers and directors. The jury could find that the fact that Zwick and Herskovitz received individual credits on the Film as the Director (Zwick) and as the authors of the screenplay (Zwick and Herskovitz) supports this inference. *See Marder BF MSJ Opp. Decl.*, Ex. 10.

Moreover, the Court finds that these facts support privity under an ostensible agency theory. In *Desny v. Wilder*, the seminal idea submission case, the California Supreme Court found that privity could exist between the Plaintiff and Defendant Billy Wilder in his personal capacity, even though Wilder was an executive employed by Defendant Paramount Pictures

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

Corporation as "a writer, producer or director, or a combination of the three," and the idea was submitted only to Wilder's secretary, "who was also employed by Paramount." *See* 46 Cal. 2d 715, 726 (1956).  The Court did not distinguish between whether the secretary, a Paramount employee, was authorized to accept submissions for Mr. Wilder personally, reasoning instead that "[i]f a producer is not commercially soliciting, and is not willing to accept an obligation to pay for, valuable ideas...which [] are offered to be conveyed only upon the assumption of such an obligation, he does not need to read manuscripts which he knows are submitted on those terms, or to have his secretary take dictated synopses of stories offered on those conditions, and then use them."  *See id.* at 743.  The California Supreme Court also rejected the contention that because the secretary did not have authority to negotiate contracts for the purchase of scripts, an implied-in-fact contract binding on the defendants could not have been created.  *See id.* at 745.

     Because Solomon was authorized to receive submissions and reported directly to Zwick and Herskovitz, who are writers, producers and directors in addition to being the principals or "partners" of Bedford Falls, the Court sees no material distinction between the plaintiff's claim against Wilder in *Desny* and the Benay's claim against Zwick and Herskovitz.  Accordingly, summary judgment on the question of privity is denied as to Defendants Zwick and Herskovitz.

     2.     <u>Statute of Limitations</u>

     "[T]he accrual date of an implied-in-fact contract claim 'depends on the nature of [Defendants'] obligation, if any to [the Benays].'"  *Benay*, 607 F.3d at 632 (quoting *Blaustein*, 9 Cal. App. 3d at 186).  However, in implied-in-fact contract cases, the parties generally will not have defined the actionable use triggering the defendant's obligation to pay.  *See id.*  Because the intent of the parties to an implied-in-fact contract claim is difficult to ascertain, "in the absence of any reason to hold otherwise, only a use that disclosed the idea to a substantial segment of the public should be regarded as the kind of use requiring payment."  *See id.* (quoting 4 Nimmer § 19D.07[D] (quoting *Thompson v. Cal. Brewing Co.*, 191 Cal. App. 2d 506, 510, 12 Cal. Rptr. 783 (1961)).  Thus, extensive "test" advertising prior to general release was held to commence the running of the statute of limitations, *see Thompson*, 191 Cal. App. 2d at 510, while "the private auditioning of a film to national advertising agencies" did not cause the action to accrue. *See Donahue v. United Artists Corp.*, 2 Cal. App. 3d 794, 802, 83 Cal. Rptr. 131 (1969).

     In *Davies v. Krasna*, the California Supreme Court stated in dicta that "[a] suit for breach of an implied contract not to exploit an idea without paying for it does arise only with the sale or exploitation of the idea."  14 Cal. 3d 502, 511-12, 121 Cal. Rptr. 705 (1975) (citing *Donahue*, 2 Cal. App. 3d at 802); *Benay*, 607 F.3d at 632.  Plaintiffs therefore urge the Court to apply a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

bright-line rule that actionable use can occur only upon a substantial disclosure that destroys the idea's future marketability.

However, *Blaustein*, a pre-*Davies* cases relied on by Defendants, suggested that a party was not precluded from showing that the parties intended the "actionable use" to occur prior to release. *See* 9 Cal. App. 3d at 186 (noting that the parties could have intended for "use" to include, and therefore for a cause of action to accrue, from "the moment a preliminary script is written embodying [plaintiffs'] idea, even if in fact no motion picture production, based upon such a script, ever occurs"); *accord* 4 Nimmer § 19D.07[D] (noting that "*in the absence of any reason to hold otherwise*, only a use that 'disclosed the idea to a substantial segment of the public' should be regarded as the kind of use requiring payment") (emphasis added). Because *Blaustein* has not been overruled, was cited by the Ninth Circuit in its remand order, and *Davies* discussed the question of actionable use in implied-in-fact contract cases only in dicta, the Court declines to apply a bright-line rule barring Defendants from showing that the actionable use occurred prior to the Film's release.

Nonetheless, even under the rule announced in *Blaustein*, a suit commenced within two years of general release will usually be unripe for summary judgment because disputed facts going to "actionable use" will prevent the Court from setting an earlier accrual date as a matter of law. *See Blaustein*, 9 Cal. App. 3d at 186.

Here, Bedford Falls, Zwick, and Herskovitz, joined by Warner Bros. and John Logan, seek summary judgment on the grounds that the deposition testimony of Plaintiffs' agent, Phillips, establishes an accrual date of May 9, 2003 at the latest - seven months prior to the Film's release. Defendants' claim that Phillips testimony establishes that under the terms of the implied-in-fact contract, the Benays were to be paid "at least some money at the time the literary property was optioned or purchased," and that Plaintiffs would be entitled to payment when principal photography of the film commenced and when principal photography ended. *See BF MSJ Mot.* 19:1-16. Because principal photography commenced on March 12, 2003 and wrapped on May 9, 2003, at which point Plaintiffs were not paid, their breach of implied-in-fact contract claim accrued at that time. An excerpt of the challenged line of questioning reads as follows:

> [Phillips]: [t]he way our business works is that first someone usually options or purchases a screenplay or their work or their idea or their treatment.

Link 271 thru 275

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

| Q.: | Okay. |
|---|---|
| [Phillips]: | So you get paid in two - front end and middle end and back end. Writers maybe not so much back end. But so option of a screenplay or sale of a screenplay, then you get paid another sum of money when that movie gets made. |
| Q: | Okay. So it was your understanding that if the Benay screenplay was used to produce a feature film, that they would get paid at least some money at the time the literary property was optioned or purchased? |
| [Phillips]: | Yes. |

….

*See Marder Opp. to WB MSJ Decl.*, Ex. 7, 112:20-113:19.

      Phillips' deposition statements largely discuss standard industry terms found in express contracts. The above statements that do directly relate to the Bedford Falls pitch are too ambiguous to allow the Court to conclude, as a matter of law, that the parties defined the "actionable use" of Plaintiffs' ideas to take place prior to the Film's release. First, the term "literary property" as used above is deliberately vague, and the trier of fact could conclude that Phillips' assent was intended only to convey his understanding at the time of the pitch that if Bedford Falls optioned or sold the *Benay's* Screenplay, Plaintiffs would be then be entitled to compensation. But the Benay's Screenplay was never optioned or purchased. Instead, Defendants are alleged to have fraudulently rejected the Screenplay and then gutted its key ideas. Second, even if Phillips' statements could be so construed, they do not establish that Phillips conveyed a specified actionable use term and that the parties manifested their agreement to this term. *Cf. Blaustein*, 9 Cal. App. 3d at 185-86 ("The question…as to when, within the meaning of the implied promise…respondents may be held to have used appellant's idea…again raises an issue of fact turning on *the manifested intent of the parties.*") (emphasis added).

      Because Defendants have not established that *the parties* understood, at the time of the pitch, that the actionable use for the fraudulent rejection of Plaintiffs' Screenplay and misappropriation of Plaintiffs' ideas was intended to occur prior to general release, Defendants have not distinguished this case from the typical idea submission case where "*the parties* will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

not have defined the requisite use." *See Benay*, 607 F.3d at 633 (quoting 4 Nimmer § 19D.07[D]) (emphasis added). Should the jury reach this conclusion, only a use that "'disclosed the idea to a substantial segment of the public' should be regarded as the kind of use requiring payment." *See id.* Accordingly, Phillips testimony does not entitle Defendants to summary judgment on the running of the statute of limitations.

Defendants also point to pre-litigation correspondence and a draft complaint sent between Plaintiffs' then-counsel and Bedford Falls, arguing that this correspondence establishes that Plaintiffs believed the breach had occurred prior to the Film's release. However, this argument was raised and rejected in connection with Defendants' first motion for partial summary judgment. *See* Dkt. # 61. The Court's determination was upheld on appeal. *See Benay*, 607 F.3d at 633. Because neither the underlying facts of Plaintiffs' pre-litigation correspondence nor the governing law has changed in the interim, the Court will not revisit its holding.

The Court also rejects Defendants' attempt to muddy the waters by suggesting that the statute of limitations began to run "upon any other act of disclosure, use, misappropriation or conversion of the idea," of which the Plaintiffs had notice. *See BF MSJ Mot.* 17:18-22, 19:17-20:2 (citing *Haglund v. Dow Chemical Co.*, 218 U.S.P.Q. 55, 65 (1982)). This argument, too, was addressed and rejected by the Ninth Circuit, noting that "the accrual date of an implied-in-fact contract claim 'depends on the nature of [Defendants'] obligation,'" and not "on when the Benays became aware of Defendants' use of the Screenplay." *See Benay*, 607 F.3d at 632 (citing *Blaustein*, 9 Cal. App. 3d at 185).

Defendants have not shown that the "actionable use" of the Plaintiffs ideas occurred prior to general release of the Film as a matter of law. Accordingly, summary judgment as to Defendants Bedford Falls, Zwick, and Heskovitz is DENIED.

IV. Conclusion

The motion for terminating sanctions is DENIED. Summary judgment is GRANTED in favor of Defendants Warner Bros. and Logan in light of Plaintiffs' failure to plead any theory of privity in the FAC and amend their discovery responses, and because privity with Bedford Falls does not extend to Logan under *Donahue*. Summary judgment is DENIED as to Defendants Zwick and Herskovitz on the question of privity, and as to Zwick, Herskovitz and Bedford Falls on the statute of limitations.

Link 271 thru 275

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES - GENERAL

| Case No. | CV 05-8508 PSG (FMOx) | Date | February 14, 2012 |
|---|---|---|---|
| Title | Aaron Benay, *et al.* v. Warner Bros. Entertainment, Inc., *et al.* | | |

**IT IS SO ORDERED.**