QUINN EMANUEL URQUHART & SULLIVAN LLP
Gary E. Gans (Bar No. 89537)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: garygans@quinnemanuel.com

BAKER MARQUART LLP
Jaime W. Marquart (Bar No. 200344)
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
Telephone: (424) 652-7800
Facsimile: (424) 652-7850
Email: jmarquart@bakermarquart.com

Attorneys for Defendants The Bedford Falls Company (erroneously sued as Bedford Falls Productions, Inc.), Edward Zwick and Marshall Herskovitz

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| AARON BENAY, an individual, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation, *et al.*,<br><br>Defendants. | CASE NO. CV 05-8508 PSG (FMOx)<br>**DEFENDANTS THE BEDFORD FALLS COMPANY'S, EDWARD ZWICK'S AND MARSHALL HERSKOVITZ'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING DEFENDANTS' REVENUE FROM *THE LAST SAMURAI* (OR ANY REVENUE OR INCOME);**<br><br>Date Filed: December 5, 2005<br>Trial Date: March 20, 2012 |

## Introduction

As the Court correctly indicated at the Pretrial Conference, Plaintiffs must present a proper measure of damages to the jury that treats the alleged implied-in-fact contract the same way that it would treat any contract. The Court asked a simple question of Plaintiffs' counsel: what damages number do Plaintiffs intend to present to the jury? Counsel could not give a number. When pressed, he stated that the amount ranged somewhere between $7 and $10 million. The Court then asked the *most* important question to be resolved before trial: how can Plaintiffs prove any of those exorbitant numbers, in a non-speculative way, in a breach of contract action involving the alleged submission of ideas by unproven writers? Motion *In Limine* No. 2 answers these questions: Plaintiffs cannot justify their counsel's range of damages, or anything close to it.

Plaintiffs admit that the total value of $150,000 represented by their New Regency contract is the proper measure of the fair market value of their work. That is the only proper measure of damages in this case. Plaintiffs' proffered measure of damages involves an after-the-fact, punitive contract construction. For example, Plaintiffs' Opposition states, "[b]ecause defendants did not do the right thing" and enter into an express contract for Plaintiffs' ideas, this "screenplay written by newcomers" may be transformed into a "now-proven screenplay" (apparently, one with a $7-10 million value). Opposition at 2:14-18.

Plaintiffs' damages theory goes against every fundamental principle of contract law, which does not punish the breach beyond the contract's terms, allows for no unforeseeable consequential damages, and never supports tort-based disgorgement of profits (as in, for example, a copyright case).

It also does not matter that the contract is implied from conduct (rather than express) or that Defendants deny its existence. To the contrary, the California Supreme Court in Freeman Mills, Inc. v. Belcher Oil Co. **[citation]** – published

twenty-six years after the <u>Donahue</u> decision upon which Plaintiffs exclusively rely for their after-the-fact, royalty-based theory of damages – abrogated all prior authority gauged at punishing the breach and held that *even when defendants deny the existence of a contract, they may not be punished by damages other than standard contract damages.*  Accordingly, <u>Donahue</u> cannot be read as Plaintiffs attempt to read it.

Thus, the Court, "looking at the implied contract, like any contract," stated at the Pretrial Conference:

> You look at the contract when it was made. And when the contract was made, the sellers were not in a great position in terms of they had never been -- their screenplays had never been used in a movie before, and now they are approaching somebody and saying 'Here's our screenplay. What are you willing to give me for it?' Why isn't it, for example, I would think the defendants are going to say, 40 thousand dollars?

(Final Pretrial Conference Transcript dated March 12, 2012 ("Pretrial Conf.") at 18:15-19:23, Marquart Reply Declaration in Support of Motion *In Limine* No. 1 ("Marquart Reply Decl") Ex. D at 48-49.

Because Plaintiffs' after-the-fact measure of value is inappropriate, *no* revenues from any party (Defendants John Logan or Warner Bros.) is relevant, and neither is the box office gross of the film, and Plaintiffs should be precluded from referencing these amounts.

## Argument

### A. The Appropriate Measure of Damages for an Implied in Fact Contract is the Value of the Ideas Allegedly Used

The measure of damages for breach of implied contract in this instance, as with any contract, is the reasonable market value of Plaintiffs' ideas.  Under California law, an implied-in-fact contract has the same force and effect as an

express contract, the only difference being that "[a]n implied contract is one, the existence and terms of which are manifested by conduct." Cal. Civ. Code § 1621; Foley v. Interactive Data Corp., 47 Cal.3d 654, 677 (1988) (implied contracts stand on "equal footing" with express contracts); Friedman v. Friedman, 20 Cal. App. 4th 876, 887 (1993) (an implied contract "in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between the two being the mere mode of proof by which they are to be respectively established"); Zenith Ins. Co. v. Cozen O'Connor, 148 Cal.App.4th 998 (2007); Desny v. Wilder, 46 Cal. 2d 715, 738 fn. 9 (1956). Thus, to use the Court's words at the Pretrial Conference, an implied contract is treated "like any contract."

The measure of damage for the breach of *any* contract is the "benefit of the bargain," which in the case of a contract for the sale of property is the reasonable market value of the property being conveyed. Cal Civ. Code §§ 3353, 3358. For this reason, case law holds that the reasonable market value of the property conveyed in an instance such as this one is the proper measure of damages for breach of implied contract. Desny, 46 Cal. 2d at 737; Mann v. Columbia Pictures, Inc., 128 Cal. App. 3d 628, 632 (1982) ("[P]laintiff's potential recovery was restricted to the 'reasonable value' of her ideas allegedly used in the production of 'Shampoo.' Evidence relative to the motion picture's earnings and number of showings was irrelevant.").[1]

---

[1] *See also* Portercare Adventist Health System v. Lego, 2010 WL 3584394 (Colo. App. 2010) (*cert.* granted Mar. 24, 2011) (citing cases); Scott v. Grinnel Mut. Reinsurance Co., 653 N.W.2d 556 (Iowa 2002) ("For breach of an implied-in-fact contract, the injured party is entitled to *quantum meruit*- the reasonable value of the services provided and the market value of the materials furnished"); Davies v. Olsen, 746 P.2d 264, 269 (Utah Ct. App. 1987) ("[t]echnically, recovery in contract implied-in-fact is the amount the parties intended as the contract price … if that
(footnote continued)

In <u>Mann</u>, Plaintiff brought an action for plagiarism, quasi-contract and breach of implied-in-fact contract with respect to various ideas contained in the film *Shampoo* which she claimed she submitted to defendants and defendants used. Ultimately, only an implied-in-fact contract claim and a quasi-contract claim remained. Defendants filed a motion *in limine* regarding evidence of plaintiff's damages. The trial judge granted the motion, as the appellate court wrote:

> While the allegations of an implied-in-fact contract between plaintiff and defendants raised triable issues, the trial judge dismissed the contentions of an implied-in-law obligation. Having dispensed with quasi-contract, plaintiff's potential recovery was restricted to the "reasonable value" of her ideas allegedly used in the production of "Shampoo." *Evidence relative to the motion picture's earnings and number of showings was irrelevant.*

The <u>Mann</u> decision is on all fours with this motion and in harmony with the standard measure of damages under any contract. Accordingly, Plaintiffs' damages here are limited under <u>Cal. Civ. Code</u> § 3358 to the benefit of the alleged bargain, *i.e.*, the "reasonable value" of Plaintiffs' ideas.

Anything more would employ a punitive standard in a contract case, which is exactly what section 3358 of the California Civil Code is intended to avoid. Unlike tort damages – which are designed to vindicate social policy and to compensate the victim for injury suffered, including mental suffering and emotional distress – contract damages seek to approximate the agreed-upon performance of the contract by allowing the injured party to recover what he would have received had the contract been performed and nothing more. <u>Ilkhchooyi v. Best</u>, 37 Cal. App. 4th 395, 412 (1995)

---

amount is unexpressed, courts will infer that the parties intended the amount to be the reasonable market value of plaintiffs' services").

1  (plaintiff is made whole by the recovery of contract damages; recovery in
2  tort would be superfluous); Freeman Mills, Inc. v. Belcher Oil Co., 11 Cal.
3  4th 85, 94 (1995) (court overruled Seaman's Direct Buying Service, Inc. v.
4  Standard Oil Co., 36 Cal.3d 752, which created a tort for breaches of
5  contract where the party denied the existence of the contract); Foley v.
6  Interactive Data Corp., 47 Cal.3d 654, 683 (1988) ("The distinction between
7  tort and contract is well grounded in common law, and divergent objectives
8  underlie the remedies created in the two areas. Whereas contract actions are
9  created to enforce the intentions of the parties to the agreement, tort law is
10 primarily designed to vindicate 'social policy.'"); *see also*, Cal. Civ. Code §
11 3294(a) (punitive damages are available only for the "breach of an
12 obligation not arising from contract").

13        In Freeman & Mills, the California Supreme Court disposed of the notion that
14 a defendant in a mere breach of contract action could be punished for denying the
15 existence of a contract.  Abrogating a former rule (noted in Seaman's Direct Buying
16 Service, Inc. v. Standard Oil Co., 36 Cal.3d 752 (1984)) to the effect that "party to a
17 contract may incur tort remedies when, in addition to breaching the contract, it seeks
18 to shield itself from liability by denying, in bad faith and without probable cause,
19 that a contract exists," Freeman & Mills precluded tort recovery for noninsurance
20 contract breaches.  11 Cal. 4th at 102.  In that case, plaintiffs sought to punish
21 defendant merely for denying the existence of the purported contract.  Id. at 103.
22 Likewise, here, Plaintiffs claim that Defendants must "bear the risk" of the ultimate
23 success of the film "[b]ecause they did not *do the right thing*" and enter into an
24 express contract.  Opposition at 2:14-18.  However, as the Supreme Court observed,
25 because contract law "does not distinguish between good and bad motives for
26 breaching a contract," the purpose of contract damages cannot be to punish the
27 defendants.  Id. at 95.  Here, if the Court were to accept Plaintiffs' damages theory,
28 it would employ either a tort, or punitive, damages measure.

1  All of the above authorities are based upon the central tenet of contract law,
2  *intent*.  They all hold, uniformly, that the price that the parties intended to pay – as
3  judged from the circumstances attending the contract (in this case, the submission of
4  ideas) – is the measure of damages for the breach of the contract.  As the next
5  section notes, *no* authority cited by Plaintiffs contradicts this basic tenet, and the one
6  court that looked to the performance of a defendant's project to determine value did
7  so only because that was expressly what the parties contemplated and discussed.

**B.  Plaintiffs' Opposition Is Based Upon an Inappropriate, Punitive Measure of Damages**

10  The correct measure of damages for breach of implied-in-fact contract is the
11  market value of the idea.  In this case, as Plaintiffs concede, Plaintiffs' sale of their
12  screenplay to New Regency is the appropriate measure of the Benay Screenplay's
13  market value.  Opposition to MIL No. 1, p. 5 footnote 2.[2]  At most, that contract had
14  a maximum value of $150,000.  Nevertheless, Plaintiffs claim that Donahue v.
15  United Artists, 2 Cal. App. 3d 794 (1969), supports an after-the-fact, royalty-based
16  measure of value here, and further claim that this "value" can be based upon such
17  factors as what Defendants (or Warner Bros. or John Logan) made on the film, the
18  ultimate success of the film or the attachment of Tom Cruise.  Plaintiffs'
19  interpretation and application of Donahue is wrong for at least three reasons.

---

[2] Defendants continue to believe that the New Regency option amount still overstates the market value of Plaintiffs' contribution because, in light of the 9th Circuit opinion, Defendants took, if anything, a small number of generic ideas from the Benay Script.

### 1. Even If Donahue *Did* Apply, the Value At Issue Has to Be "Inherent in the Thing Itself," *i.e.*, Plaintiffs' Submitted Ideas

First, even taken *out of context*, the quoted passage in Donahue in Plaintiffs' Opposition does not support the damage measure Plaintiffs urge (*i.e.*, one based upon the gross revenues from Defendants' film). That quoted passage reads:

> "Value for exchange is not the *only* value known in the law of damages. There are times when heed must be given to value for use, if reparation is be to be adequate. . . . The *market test failing*, there must be reference to the values inherent in the thing itself, whether for use or for exchange."

2 Cal.App.3d at 805 (1969) (emphasis added).

This passage merely states that value for exchange may not *always* be the only value applicable in an implied-in-fact contract – it does not state that it is an incorrect measure in *most* instances. Implicit in this statement is the premise that the standard measure of value is the value for exchange. Furthermore, as the quote also states, even in such exceptional instances, "there must be reference to the values inherent in the thing itself." Donahue at 805; Opposition at 6:5-7. The "thing" referred to above is not the entirety of a defendant's work (*e.g.*, the film *The Last Samurai*), but the ideas Plaintiffs submitted and Defendants used. In other words, whether one calls it "price" or "value," the measure of damages must reflect the true worth of the ideas being submitted, *i.e.*, "the values inherent in the thing itself."

### 2. Donahue Only Arguably Applies When the Market Test Fails

Second, Donahue merely reflects that sometimes a market value test may fail – "[t]he market test failing, there must be reference to the values inherent in the thing itself. . ."), not that a plaintiff in a run-of-the-mill implied contract case may receive a punitive sum. Here, Plaintiffs admit that the market test did *not* fail, as there is an undisputed fair market value of $150,000 for Plaintiffs' screenplay.

Heller Vol. I, 60:10-23, Marquart Reply Decl. Ex. A at 5; Heller Vol. II (2012) 33:24-34:8, Marquart Reply Decl. Ex. B at 11-12.

### 3. **Donahue Could Only Apply When the Parties Contemplated an After-the-Fact Measure of Damages (*e.g.*, Royalties)**

Third, the damage measure applied in Donahue was only justified because there was evidence that the parties had specifically contemplated a contract value that was dependent upon the amount made on the project being pitched. Importantly, in that case, there was no ascertainable market value for the plaintiff's idea and the parties contemplated several different compensation models, including a payment of royalties (which necessarily is based upon revenues). For example, in the underlying companion case to Donahue, Donahue v. Ziv Television Programs, 245 Cal. App. 2d 593, 603 (1966), Defendant's vice-president, Herbert Gordon, testified as to several potential means of compensation discussed with plaintiffs at initial meetings:

> And I told them, 'There are several types of deals. There is a royalty deal, royalty payment deal … A percentage of profit deal, a personal service deal to be determined to what extent they could contribute to the project … and an outright buyout deal …

*Id.* at 603. Thus, potential methods of compensation contemplated by the parties included profit participation and royalties. In upholding the damage award, the court in Donahue v. United Artists expressly referenced Gordon's testimony quoted above, and noted that he gave the "only testimony" regarding methods of compensation. 2 Cal. App. 3d at 804. The court noted that Gordon testified as to royalty means of compensation as well as a percentage of profits deal. *Id.* The trial court's award of a royalty-based measure of damage was upheld because it was a measure of damages contemplated by the parties contemplated.

Donahue does not help Plaintiffs here. First, in this case, there is no uncertainty regarding the market value of Plaintiffs' services. Plaintiffs' expert

Peter Heller has testified that $150,000 was a "fair market value." Plaintiff's Opposition p. 5 fn. 2 (emphasis in original); Heller Vol. I, 60:10-23, Marquart Reply Decl. Ex. A at 5; Heller Vol. II (2012) 33:24-34:8, Marquart Reply Decl. Ex. B at 11. Second, the present case involves <u>new</u> writers, not producers, as in <u>Donahue</u>. Third, in <u>Donahue</u> the parties actually contemplated an after-the-fact, royalty-based compensation model. In fact, the plaintiffs had several pre-production meetings, submitting not just scripts *but a budget* for the television series. <u>Donahue v. Ziv</u>, 245 Cal. App. 2d at 598. Thus, it should come as no surprise that plaintiffs and Ziv's management contemplated a royalty-based model (a budget for the film having been discussed, and production services being at issue). Here, a royalty-based model was never contemplated. There is absolutely no support for the model applied in <u>Donahue</u>.

### C.     <u>*Any* Income Obtained by Any Person or Entity from the *The Last Samurai* Is Irrelevant to Damages, and Its Probative Value is Clearly Outweighed by Its Prejudice</u>

Plaintiffs' Opposition impliedly concedes that, unless their proffered measure of damages is accepted by the Court, the income obtained by any person or entity from *The Last Samurai* would be irrelevant. Thus, if Plaintiffs' interpretation of <u>Donahue</u> and corresponding measure of damages is rejected, then Defendants' Motion *in Limine* No. 2 should be granted in all respects.

In addition, even if Plaintiffs' reading of <u>Donahue</u> were correct, the income and profits that *Defendants* made would be irrelevant, because <u>Donahue</u> only stands for the proposition that the parties may have implied some form of revenue-based, or royalty-based model, *not* that the model is to be based upon what any Defendant (or former Defendant) made from the film. As late as the Pretrial Conference (eight days before the then-scheduled trial date), Plaintiffs' counsel could still not tell the Court how its $7-$10 Million range was determined, much less what percentage (if any) of Defendants' revenues Plaintiffs claimed the parties contemplated giving

Plaintiffs if their ideas were used. The reason he could not do so is obvious: Plaintiffs never alleged, the parties never contemplated, and the circumstances and customary practices in the industry do not support, any contract based upon a percentage of Defendants' income on the film.

Moreover, as noted in more detail in Motion *In Limine* No. 1, Plaintiffs have no expert or other means to establish a reasonable royalty rate for their ideas. Instead they have only offered gross revenue numbers, without even calculating (much less supporting with evidence) any reasonable royalties or profit participation. Thus, any reference to revenue on the film or income from particular Defendants (or other parties) is prejudicial and not relevant to any reasonable damages calculation.

DATED: March 12, 2012        QUINN EMANUEL URQUHART
                                               & SULLIVAN LLP

                                               BAKER MARQUART LLP

                                               By /s/ Gary E. Gans
                                                   Gary E. Gans
                                                   Attorneys for Defendants Bedford Falls Company (erroneously sued as Bedford Falls Productions, Inc.), Edward Zwick and Marshall Herskovitz