QUINN EMANUEL URQUHART & SULLIVAN LLP
Gary E. Gans (Bar No. 89537)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: garygans@quinnemanuel.com

BAKER MARQUART LLP
Jaime W. Marquart (Bar No. 200344)
10990 Wilshire Blvd., Fourth Floor
Los Angeles, California 90024
Telephone: (424) 652-7800
Facsimile: (424) 652-7850
Email: jmarquart@bakermarquart.com

Attorneys for Defendants The Bedford Falls Company (erroneously sued as Bedford Falls Productions, Inc.), Edward Zwick and Marshall Herskovitz

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AARON BENAY, an individual, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation, *et al.*, <br><br> Defendants. | CASE NO. CV 05-8508 PSG (FMOx) <br><br> **DEFENDANTS' TRIAL BRIEF** <br><br> Date Filed: December 5, 2005 <br> Trial Date: March 27, 2012 |

{00049416.DOC - v1}

DEFENDANTS' TRIAL BRIEF

Defendants The Bedford Falls Company, Edward Zwick and Marshall Herskovitz respectfully submit the following Trial Brief.

## Preliminary Statement

This trial brief addresses three legal issues, the resolution of which will significantly narrow the scope of the trial: (1) the legal limits on Plaintiffs' damages case under an implied-in-fact contract claim; (2) the law of the case pursuant to this Court's and the Ninth Circuit's adjudication of Plaintiffs' copyright claim; and (3) the admissibility of lay opinion testimony from the Plaintiffs concerning the alleged similarities between their screenplay and the motion picture, "The Last Samurai."

First, the Court should determine at the outset the proper measure of damages and limit the evidence accordingly. The law is clear: Plaintiffs' damages are limited to the fair market value of any ideas that they submitted and that Defendants allegedly used, and nothing more. Plaintiffs' after-the-fact, royalty-based damages theory has no support in the law or the evidence.

The Ninth Circuit fully disposed of one of Plaintiffs' claims (copyright infringement) and remanded the other (breach of implied-in-fact contract). The Court provided guidance on the remaining contract claim which is binding on the trial proceedings under the law of the case doctrine. Principally, the Ninth Circuit held that Plaintiffs must prove Defendants' alleged "use" of their screenplay by demonstrating a substantial similarity between the screenplay and Defendants' film, *and that there is no substantial similarity between the copyright-protectable elements of the screenplay and film.*

In fact, both this Court and the Ninth Circuit extensively analyzed the copyright-protectable elements in Plaintiffs' screenplay (*i.e.* the plot, sequence of events, characters, theme, setting, mood, pace, and dialogue), and concluded that there was no substantial similarity. This Court therefore should preclude Plaintiffs from disregarding its and the Ninth Circuit's decisions and asserting that the copyright-protectable elements in the two works *are* substantially similar.

In addition, Plaintiffs should be precluded from testifying at trial about purported "substantial similarity" between Plaintiffs' and Defendants' works. Such testimony would be an inadmissible lay opinion. Plaintiffs' testimony regarding any alleged similarity must be confined to actual facts.

## Argument

### I. PLAINTIFFS' DAMAGES CASE MUST BE LIMITED TO EVIDENCE AND ARGUMENT RELATED TO THE FAIR MARKET VALUE OF THE IDEAS DEFENDANTS ALLEGEDLY USED

#### A. The Appropriate Measure of Damages for an Implied-in-Fact Contract is the Value of the Ideas Allegedly Used

The measure of damages for breach of implied-in-fact contract here, as with any contract, is the reasonable market value of Plaintiffs' ideas. Under California law, an implied-in-fact contract has the same force and effect as an express contract, the only difference being that "[a]n implied contract is one, the existence and terms of which are manifested by conduct." *Cal. Civ. Code* § 1621; *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 677 (1988) (implied contracts stand on "equal footing" with express contracts); *Friedman v. Friedman*, 20 Cal. App. 4th 876, 887 (1993) (an implied contract "in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between the two being the mere mode of proof by which they are to be respectively established"); *Zenith Ins. Co. v. Cozen O'Connor*, 148 Cal.App.4th 998 (2007); *Desny v. Wilder*, 46 Cal. 2d 715, 738 fn. 9 (1956). Thus, to use the Court's words at the Pretrial Conference, an implied contract is treated "like any contract."

The measure of damage for the breach of *any* contract is the "benefit of the bargain," which in the case of a contract for the sale of property is the reasonable market value of the property being conveyed. *Cal Civ. Code* §§ 3353, 3358. For this reason, case law holds that the reasonable market value of the property conveyed in an instance such as this one is the proper measure of damages for

breach of an implied-in-fact contract. *Desny*, 46 Cal. 2d at 737; *Mann v. Columbia Pictures, Inc.*, 128 Cal. App. 3d 628, 632 (1982) ("[P]laintiff's potential recovery was restricted to the 'reasonable value' of her ideas allegedly used in the production of 'Shampoo.' Evidence relative to the motion picture's earnings and number of showings was irrelevant.").[1]

In *Mann*, Plaintiff brought an action for plagiarism, quasi-contract and breach of implied-in-fact contract with respect to various ideas contained in the film *Shampoo* which she claimed she submitted to defendants and defendants used. Ultimately, only an implied-in-fact contract claim and a quasi-contract claim remained. Defendants filed a motion *in limine* which was ultimately granted. The court of appeal wrote:

> While the allegations of an implied-in-fact contract between plaintiff and defendants raised triable issues, the trial judge dismissed the contentions of an implied-in-law obligation. Having dispensed with quasi-contract, plaintiff's potential recovery was restricted to the "reasonable value" of her ideas allegedly used in the production of "Shampoo." *Evidence relative to the motion picture's earnings and number of showings was irrelevant.*

128 Cal.App. 3d at 632 (emphasis added).

---

[1] The law in other jurisdictions is the same. *See Portercare Adventist Health System v. Lego*, 2010 WL 3584394 (Colo. App. 2010) (*cert.* granted Mar. 24, 2011) (citing cases); *Scott v. Grinnel Mut. Reinsurance Co.*, 653 N.W.2d 556 (Iowa 2002) ("For breach of an implied-in-fact contract, the injured party is entitled to *quantum meruit*- the reasonable value of the services provided and the market value of the materials furnished"); *Davies v. Olsen*, 746 P.2d 264, 269 (Utah Ct. App. 1987) ("[t]echnically, recovery in contract implied-in-fact is the amount the parties intended as the contract price … if that amount is unexpressed, courts will infer that the parties intended the amount to be the reasonable market value of plaintiffs' services").

The *Mann* decision is on all fours with this motion and in harmony with the standard measure of damages under any contract. Accordingly, Plaintiffs' damages are limited under *Cal. Civ. Code* § 3358 to the benefit of the alleged bargain, *i.e.*, the "reasonable value" of Plaintiffs' ideas.

Anything more would employ a tort standard in a contract case, which is exactly what section 3358 of the California Civil Code proscribes. Unlike tort damages – which are designed to vindicate social policy and to compensate the victim for injury suffered, such as mental suffering and emotional distress – contract damages seek to approximate the agreed-upon performance of the contract by allowing the injured party to recover what he or she would have received had the contract been performed and nothing more. *Ilkhchooyi v. Best*, 37 Cal. App. 4th 395, 412 (1995) (plaintiff is made whole by the recovery of contract damages, not recovery in tort); *Freeman Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 94 (1995); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683 (1988) ("The distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate 'social policy.'").

In *Freeman & Mills*, the California Supreme Court disposed of the notion that a defendant in a mere breach of contract action could be punished for denying the existence of a contract. Abrogating a former rule (noted in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752 (1984)) to the effect that "party to a contract may incur tort remedies when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that a contract exists," *Freeman & Mills* precluded tort recovery for noninsurance contract breaches. 11 Cal. 4th at 102. In that case, plaintiffs sought to punish defendant merely for denying the existence of the purported contract. *Id*. at 103.

Likewise, here, Plaintiffs claim that Defendants must "bear the risk" of the ultimate success of the film "[b]ecause they did not *do the right thing*" and enter into an express contract. Plaintiffs' Opposition to Defendants' MIL No. 2 at 2:14-18. However, as the Supreme Court observed, because contract law "does not distinguish between good and bad motives for breaching a contract," the purpose of contract damages cannot be to punish the defendants. *Id.* at 95. Here, if the Court were to accept Plaintiffs' damages theory, it would employ either a tort, or punitive, damages measure.

### B. Plaintiffs' Reliance on Donahue v. United Artists to Support Its Claim of Damages Is Misguided

The correct measure of damages for breach of implied-in-fact contract is the <u>market value</u> of the idea. Nevertheless, Plaintiffs claim that *Donahue v. United Artists*, 2 Cal. App. 3d 794 (1969), supports an after-the-fact, royalty-based measure of damages here, and further claim that the damages can be based upon such factors as the gross revenues that Defendants (whether for writing, directing or producing services), Warner Bros. or John Logan (an Academy Award nominated writer) received. Plaintiffs' interpretation and application of <u>Donahue</u> is wrong for at least three reasons.

#### 1. Even If *Donahue Did* Apply, the Value At Issue Has to Be "Inherent in the Thing Itself," *i.e.*, Plaintiffs' Submitted Ideas

First, even taken *out of context*, the passage in *Donahue* on which Plaintiffs rely does not support the damage measure Plaintiffs urge (*i.e.*, one based upon the gross revenues from Defendants' film). That passage reads:

> "Value for exchange is not the *only* value known in the law of damages. There are times when heed must be given to value for use, if reparation is be to be adequate. . . . The *market test failing*, there must be reference to the values inherent in the thing itself, whether for use or for exchange."

2 Cal.App.3d at 805 (1969) (emphasis added).

This passage merely states that value for exchange may not *always* be the only value applicable in an implied-in-fact contract – it does not state that it is an incorrect measure. Implicit in this statement is the premise that the standard measure of value is the value for exchange. Furthermore, as the quote also states, even in exceptional instances, "there must be reference to the values inherent in the thing itself." *Donahue* at 805. The "thing itself" referred to is not the entirety of a defendant's work (*e.g.*, the film *The Last Samurai*), but the ideas Plaintiffs submitted and Defendants used. In other words, the measure of damages must reflect the true worth of the ideas being submitted, *i.e.*, "the values inherent in the thing itself."

### 2. **Donahue Can Only Arguably Apply When the Market Test Fails**

Second, *Donahue* merely reflects that sometimes a market value test may fail – "[t]he market test failing, there must be reference to the values inherent in the thing itself. . ." -- not that a plaintiff in a run-of-the-mill implied-in-fact contract case may receive damages in excess of fair market value. Here, Plaintiffs admit, and their expert has confirmed, that the market test did *not* fail, as there is an undisputed fair market value of $150,000 for Plaintiffs' screenplay.

### 3. **Donahue Could Only Apply When the Parties Contemplated an After-the-Fact Measure of Damages (*e.g.*, Royalties)**

Third, the damage measure applied in *Donahue* was only justified because the parties specifically contemplated a contract value that was dependent upon the revenues from the project being pitched. Importantly, in that case, there was no ascertainable market value for the plaintiff's idea and the parties contemplated several different compensation models, including a payment of royalties (which necessarily is based upon revenues). In the underlying companion case to *Donahue, Donahue v. Ziv Television Programs*, 245 Cal. App. 2d 593, 603 (1966), Defendant's vice-president, Herbert Gordon, testified as to several potential means of compensation discussed with plaintiffs at initial meetings:

> And I told them, 'There are several types of deals. There is a royalty deal, royalty payment deal … A percentage of profit deal, a personal service deal to be determined to what extent they could contribute to the project … and an outright buyout deal …

*Id.* at 603.

Thus, potential methods of compensation contemplated by the parties included profit participation and royalties. In upholding the damage award, the court in *Donahue v. United Artists* expressly referenced Gordon's testimony, and noted that he gave the "only testimony" regarding methods of compensation. 2 Cal. App. 3d at 804. The court noted that Gordon testified as to royalty-based compensation as well as a percentage of profits deal. *Id*. The trial court's award of a royalty-based measure of damage was upheld because it was a measure of damages specifically contemplated by the parties.

### 4. Plaintiffs Have No basis for Setting any Royalty Rate

Finally, Plaintiffs have no basis at all for setting any royalty rate. They have no expert or other witness designated to calculate a reasonable rate. And they have not even suggested how they could establish either a reasonable percentage or the specific revenues to which the percentage should be applied. In contrast, in *Donahue*, the royalty rate was based on . . . . .

Thus, *Donahue* does not help Plaintiffs here. First, *Donohue* requires damages based on the value inherent in Plaintiffs' ideas, not based on other parties' gross revenues which may not relate to such value. Second, there is no uncertainty regarding the market test -- Plaintiffs' expert Peter Heller has testified that $150,000 was a "fair market value." Third, this case involves <u>new</u> writers, not producers, as in *Donahue*, and writers are compensated differently than producers. Fourth, in *Donahue*, the parties actually contemplated an after-the-fact, royalty-based compensation model. In fact, the plaintiffs had several pre-production meetings,

submitting not just scripts *but a budget* for the television series. *Donahue v. Ziv*, 245 Cal. App. 2d at 598. Thus, it should come as no surprise that the parties contemplated a royalty-based model (a budget for the film having been discussed, and production services being at issue). Here, a royalty-based model was never contemplated. Finally, unlike in Donahue, Plaintiffs do not even have a means or method of establishing a reasonable royalty rate. There is absolutely no support for the model applied in Donahue.

## II. THE LAW OF THE CASE DOCTRINE PREVENTS THE JURY FROM FINDING SUBSTANTIAL SIMILARITY AS TO MANY OF PLAINTIFFS' ALLEGED SIMILARITIES

### A. The Ninth Circuit's Opinion Is Binding

The Ninth Circuit affirmed this Court's order granting summary judgment on Plaintiffs' copyright infringement claim and reversed as to Plaintiffs' breach of implied-in-fact contract claim. *Benay v. Warner Bros. Ent. Inc.*, 607 F.3d 620, 634 (9th Cir. 2010). The Court "remand[ed] for further proceedings consistent with this opinion." *Id*. The Ninth Circuit's explicit instructions, the law of the case doctrine, and the *Benay* opinion's publication all bind the future proceedings in this case.

Under the law of the case doctrine, "the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996); *see also Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) ("Law of the case rules are founded upon . . . sound public policy"); *Snow-Erlin v. United States*, 470 F.3d 804, 807 (9th Cir. 2006) (precedent must be followed "[f]or the sake of efficiency and consistency"). The doctrine applies to all issues "decided explicitly or by necessary

implication in the previous disposition." *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990).[2]

The law of the case doctrine dictates that appellate decisions in a case must be followed unless "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *In re Rainbow*, 77 F.3d at 281 (subsequent controlling authority necessitated departure from prior appellate holding). Of course, none of those factors is present here, and Plaintiffs have not alleged the presence of any such factors.

The Ninth Circuit's opinion also must be followed for the simple reason that it is published. "Circuit law binds all courts within a particular circuit including the court of appeals itself." *Hart v. Massanari*, 266 F.3d 1155, 1180 (9th Cir. 2001) (courts of appeal may decide which of their opinions to publish and be binding). "Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point is the law." *Id.* at 1170. The trial therefore must adhere to the Ninth Circuit's opinion.

**B.     The Ninth Circuit Established the Relevant Law of Implied-In-Fact Contracts**

In *Benay*, the Ninth Circuit reiterated well-established California substantive law regarding implied-in-fact contracts and applied it to this case. The Court

---

[2] The law of the case doctrine applies to this Court's order granting summary judgment as well. *See, e.g., Marable v. Nitchman*, 511 F.3d 924, 930, fn 11 (9th Cir. 2007) (law of the case doctrine "provid[es] that a court will not reconsider an issue decided explicitly or by necessary implication by the same or a higher court in the identical case") (citing *Jeffries*, 114 F.3d at 1489); *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1038 (9th Cir. 2000) (district court established "law of the case" in its summary judgment ruling).

concluded that "[t]o establish a case for breach of an implied-in-fact contract based on the submission of their Screenplay, the Benays must establish that: (1) they submitted the Screenplay for sale to Defendants; (2) they conditioned the use of the Screenplay on payment; (3) Defendants knew or should have known of the condition; (4) Defendants voluntarily accepted the Screenplay; (5) Defendants actually used the Screenplay; and (6) the Screenplay had value." *Benay*, 607 F.3d at 629 (citing *Mann v. Columbia Pictures, Inc.*, 128 Cal. App. 3d 628, 647 n. 6 (1982); *Faris v. Enberg*, 97 Cal. App. 3d 309, 318 (1979)).

With respect to the fifth factor – "use" of the Screenplay – the Court also applied well-established California law, concluding that "*there must be 'substantial similarity'* between plaintiff's idea and defendant's production to render defendant liable." *Benay*, 607 F.3d at 631 (emphasis added) (quoting *Nimmer on Copyright*, Vol. 4, § 19D.08[A], which cites multiple California decisions, including *Kurlan v. Columbia Broad. Sys., Inc.*, 40 Cal. 2d 799, 809 (1953)). The requirement of substantial similarity for implied-in-fact contract claims "*aligns this field with copyright infringement* . . . [and] also means that copying less than substantial material is non-actionable." *Id*. (emphasis added). For the reasons discussed in Section II.A. above, this formulation of the law of implied-in-fact contracts must be applied at trial.

### C. Plaintiffs' Copyright Claim Has Been Adjudicated, Thereby Establishing That There Is No Substantial Similarity as to Copyright-Protectable Material

It is undisputed that Plaintiffs' copyright claim has been fully adjudicated. To succeed on that claim, Plaintiffs would have had to demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Benay*, 607 F.3d at 624 (citing *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006); *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

"Original" expression therefore is copyrightable. *Feist*, 499 U.S. at 345 ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity") (citing *Nimmer on Copyright*, Vol. 1, § 2.01); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) (the requisite degree of creativity for "original" expression is "extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be") (quoting *Feist*, 499 U.S. at 345). This Court and the Ninth Circuit both have emphasized the breadth of elements which may be original and thus copyrightable. *See Benay*, 607 F.3d at 625 (copyright-protectable elements include "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events").

The central issue in the Ninth Circuit was "whether there is substantial similarity between [copyright] protected elements of the Screenplay and comparable elements of the Film." *Benay*, 607 F.3d at 624. Both this Court and the Ninth Circuit analyzed the original, copyrightable elements in Plaintiffs' screenplay, and concluded that there was no substantial similarity. Order Granting Summary Judgment dated March 14, 2008; *Benay*, 607 F.3d at 625. The Ninth Circuit therefore affirmed this Court's grant of summary judgment on the copyright infringement claim. *Id*. at 634. That holding was reached after a detailed examination of the copyright-protectable elements in Plaintiffs' screenplay, *i.e.* including "Plot and Sequence of Events," "Characters," "Theme," "Settings," "Mood and Pace" and "Dialogue." *Id*. at 625-629.

The Ninth Circuit agreed with this Court's holding that "[t]he most important similarities" between Plaintiffs' screenplay and Defendants' film "involve unprotectable elements," specifically "historical facts, familiar stock scenes, and characteristics that flow naturally from the works' shared basic plot premise."

<u>Benay</u>, 607 F.3d at 625.  On the subject of copyright-protectable elements, however, the Court unequivocally found a lack of substantial similarity.  For example:

- Despite certain plot similarities in terms of historical context, "the two narratives are strikingly different."  *Benay*, 607 F.3d at 625.
- There are certain "starkly different" characters, and characters "who have no obvious parallel in the other work."  *Id*. at 626-627.  Even for the American protagonists – the "most similar characters in the two works" – the "differences between them at least equal the similarities."  *Id*. at 626.
- The themes of the two works differ, with one "exalt[ing] the Americanized modernization of Japan," and the other "nostalgic for disappearing Japanese traditions."  *Id*. at 627.
- The copyright-protected settings in the two works are "strikingly dissimilar."  *Id*. at 627-628.
- The mood of the screenplay is "triumphant" and "fast-paced," while the mood of the film "is more nostalgic and reflective."  *Id*. at 628.
- The "pacing of the two works is substantially different."  *Id*.
- There are "limited similarities in dialogue between the two works."  *Id*. at 628.

Because this Court and the Ninth Circuit already have held that the copyright-protectable elements in Plaintiffs' screenplay and Defendants' film are *not* substantially similar, the jury cannot find that they *are* substantially similar; accordingly, this Court should preclude any argument by Plaintiffs that they *are* substantially similar.

As discussed in Section II.B., above, in order to succeed on their implied-in-fact contract claim, Plaintiffs must show (among other things) that Defendants "used" elements from Plaintiffs' screenplay.  To establish that element of "use," Plaintiffs must prove there is "substantial similarity" between Plaintiffs' screenplay

and Defendants' film. *See Benay*, 607 F.3d at 631; *Nimmer on Copyright*, Vol. 4, § 19D.08[A]; *Kurlan*, 40 Cal. 2d at 809. Any similarity between elements unprotected by copyright – *e.g.,* "historical facts" and "familiar stock scenes" – is an issue to be decided by the jury.[3] *Id*. at 632.

With respect to copyright-protectable elements, however, the issue has been fully and unambiguously resolved: Those elements are not substantially similar. *Id*. at 629. Therefore, those copyright-protectable elements cannot form the basis of an implied-in-fact contract claim. *Milgard Tempering*, 902 F.2d at 715 (issues "decided explicitly or by necessary implication in the previous disposition" shall not subsequently be reconsidered). Any other result would disregard the Ninth Circuit's decision.

---

[3] The jury is responsible for determining whether substantial similarity exists as to the non-copyright protectable elements and, if so, to what extent the similarity is due to Defendants' alleged use of Plaintiffs' screenplay. Although the Ninth Circuit stated in *Benay* that certain non-copyright-protectable traits of the two works have "similarities [which] are substantial for purposes of an implied-in-fact contract under California law," it merely determined that upon appeal from summary judgment, there is a triable issue of fact in that respect. Thus, it wrote: "We leave to the district court on remand the task of determining whether there was unauthorized use by Defendants of elements or ideas from the Benays' Screenplay." *Benay*, 607 F.3d at 632.

To the extent that Plaintiffs try to argue that, under the law of the case doctrine, similarity has been established, the Ninth Circuit's conclusions regarding the similarity of non-copyright-protectable elements were *dicta* – unnecessary to the resolution of the appeal because the only issue was whether there was a triable issue of fact as to the similarity of those elements. *Dicta* cannot be law of the case. *See, e.g., Milgard Tempering*, 902 F.2d at 715 (remarks made by court regarding "prevailing party" were *dicta*) (quoting *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982)); *Ducey v. United States*, 830 F.2d 1071, 1072 (1987) ("*Dicta* is not given preclusive effect under the law of the case doctrine in this circuit")

### D. **Plaintiffs' Memorandum of Contentions of Fact and Law Asserts Multiple Alleged "Similarities" of Copyright Protectable Elements**

Plaintiffs' Memorandum of Contentions of Fact and Law filed on February 27, 2012 ("Plaintiffs' Memo") provides a roadmap of Plaintiffs' argument with respect to "substantial similarity" and shows that Plaintiffs are attempting to assert the substantial similarity of elements that have been adjudged to be not substantially similar by this Court and the Ninth Circuit. The three most obvious examples of already resolved claims that Plaintiffs are trying to re-litigate are the character of the American protagonist, settings and themes.

Character, of course, is copyrightable. *Benay*, 607 F.3d at 626. Accordingly, the Benays argued in opposition to Defendants' motion for summary judgment, and in the Ninth Circuit, that the character of their American protagonist, named James Gamble, was copyrightable and had been infringed. *Id*. at 626-27. In Plaintiffs' Memo, Plaintiffs establish that the James Gamble character was copyrightable, claiming that the expression of his character in their screenplay was original, *i.e.* that the character was "fictionalized." Plaintiffs' Memo at 3. They describe the character as an embittered, guilt-ridden, retired Civil War officer, a "fish out of water" recruited by his former commanding officer to go to Japan to train the inept Imperial Army in modern war strategies, "something that never happened in Japanese history." *Id*. According to Plaintiffs, he is in his "30s/40s," an "expert in weaponry and warfare," "charismatic," "bitter as a result of war experiences, "has flashbacks to his horrors of battle," is "an author of non-fiction studies on warfare," is "tortured by addiction," and the screenplay ends with him "spiritually victorious." Plaintiffs' Memo at 3.

Plaintiffs argued to this Court and to the Ninth Circuit that the character in the film was "substantially similar" to their character. *Benay*, 607 F.3d at 626-27. Both this Court and the Ninth Circuit held to the contrary. *Id*. at 628. Plaintiffs cannot

argue now, and the jury cannot be allowed to find, that this Court and the Ninth Circuit were wrong and that the characters are substantially similar.

Similarly, setting is an aspect of copyright similarity analysis. *Benay*, 607 F.3d 627-28. Consequently, the Benays argued in opposition to Defendants' motion for summary judgment, and in the Ninth Circuit, that Defendants' alleged copyright infringement included the settings. *Benay*, 607 F.3d 627-28. Plaintiffs' Memo also includes the claim that Plaintiffs' settings were original expression. Plaintiffs note several purported similarities in setting: their screenplay starts in "urban America after the Civil War;" then, once in Japan, there are "[s]ettings in the interior and exterior of the Imperial Palace," the "Imperial training field," "multiple battles in foggy forests and on sunny plains" and "the Samurai retreat. Plaintiffs' Memo at 3-4.

Plaintiffs argued to this Court and to the Ninth Circuit that the settings in the film were "substantially similar" to their settings. *Benay*, 607 F.3d 627-28 . Both this Court and the Ninth Circuit, again, held to the contrary. The Ninth Circuit wrote:

> As the district court noted, the "American settings of the two works are drastically different." The Screenplay opens at West Point with a classroom scene, a snowball fight, and a scene in Gamble's comfortable home. The Film, on the other hand, opens at a San Francisco convention hall where the drunk Algren is hawking Winchester rifles. In Japan, the Screenplay includes scenes in samurai castles and in an opium den where Gamble has a spiritual crisis, none of which is in the Film. The Film includes extended scenes in a samurai village. No such village appears in the Screenplay.

*Benay*, 607 F.3d at 628. Plaintiffs cannot argue now, and the jury cannot be allowed to find, that this Court and the Ninth Circuit were wrong and that the settings are substantially similar.

Themes also are part of the copyright analysis. *Benay*, 607 F.3d at 627. The Benays have already argued in opposition to Defendants' motion for summary judgment, and in the Ninth Circuit, that Defendants' alleged copyright infringement included their themes. *Id*. Plaintiffs' Memo also asserts that the themes of the two works are substantially similar: "The 'West taking over the East,' and 'honor is more important than death,' are themes that drive each work." Plaintiffs' Memo at 5. Once more, both this Court and the Ninth Circuit held to the contrary. The Ninth Circuit analyzed the themes of both works:

> The works develop those themes in very different ways. The Screenplay exalts the Americanized modernization of Japan, expressed by Gamble triumphantly raising the American flag over Iwo Jima after killing Saigo. It characterizes samurai as part of an ugly class system from Japan's feudal past, and is largely positive about the role of westerners in modernizing Japan. By contrast, the Film is ambivalent toward modernization and is nostalgic for disappearing Japanese traditions. The Film treats the samurai tradition as an honorable way of life, sadly left behind by modernization, and treats westerners as self-interested and exploitative.

*Benay*, 607 F.3d 627. Plaintiffs cannot argue now, and the jury cannot be allowed to find, that this Court and the Ninth Circuit were wrong and that themes of 'West taking over the East,' and 'honor is more important than death,' are substantially similar in the two works.

### III. PLAINTIFFS SHOULD BE PRECLUDED FROM GIVING OPINION TESTIMONY ABOUT "SUBSTANTIAL SIMILARITY"

There is no justification for Plaintiffs (Aaron and Matthew Benay) to testify at trial as to their opinions about the claimed "substantial similarity" between their screenplay and Defendants' film. Such lay witness testimony is inadmissible and would not be helpful in assisting the jury.

A lay witness may give opinion testimony only if the opinion is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *United States v. Yazzie*, 976 F.2d 1252, 1255 (9th Cir. 1992). (lay opinions only admissible when "the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion").  The works themselves, along with factual descriptions from Plaintiffs and other lay witnesses and expert testimony regarding any similarity between works will be more than sufficient to "enable the jury to form an opinion or reach an intelligent conclusion" as to whether substantial similarity exists.  *Yazzie*, 976 F.2d at 1255; *Shaw v. Lindheim*, 919 F.2d 1353, 1356 ("analytic dissection and expert testimony are appropriate" in determining substantial similarity of ideas).  Lay witness testimony beyond factual descriptions would therefore constitute inadmissible lay opinion.  *See Lindheim*, 919 F.2d at 1356 (no provision for lay witness testimony regarding similarity between works); *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221 (3d Cir. 2008) ("[S]eldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper'") (quoting *Mitroff v. Xomax Corp.*, 797 F.2d 271, 276 (6th Cir. 1986)).  Thus, Plaintiffs' proposed testimony would be inadmissible.

The Tenth Circuit recently addressed a situation virtually identical to the one here.  In *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1180 (10th Cir. 2009), the plaintiff attempted to introduce a lay witness's testimony that Defendants' architectural plans "were substantially similar to [Plaintiff's] copyrighted plans." The Tenth Circuit concluded that the district court properly excluded such testimony.  *Id.* at 1180-81 ("[I]t was the responsibility of the district court to decide,

for itself, whether the plans were substantially similar").  Likewise, Plaintiffs here, as lay witnesses, cannot offer opinions as to whether Plaintiffs' and Defendants' works are substantially similar.

## Conclusion

For the foregoing reasons, (1) plaintiffs' damages case under an implied-in-fact contract claim must be limited to evidence or argument that relates only to the fair market value of the ideas allegedly submitted to defendants; (2) the law of the case with respect to this Court's and the Ninth Circuit's adjudication of Plaintiffs' copyright claim limits the similarities that plaintiffs' may argue to the jury; and (3) opinion testimony from the Plaintiffs regarding the alleged similarities between their screenplay and the motion picture, "The Last Samurai," is inadmissible.

DATED:  March 20, 2012         QUINN EMANUEL URQUHART
                               & SULLIVAN LLP

                               BAKER MARQUART LLP


                               By /s/ Gary E. Gans
                                  Gary E. Gans
                                  Attorneys for Defendants Bedford Falls
                                  Company (erroneously sued as Bedford Falls
                                  Productions, Inc.), Edward Zwick and Marshall
                                  Herskovitz

{00049416.DOC - v1}

-18-

DEFENDANTS' TRIAL BRIEF